JAN I. GOLDSMITH, City Attorney
DONALD R. WORLEY, Assistant City Attorney
DONALD F. SHANAHAN, Chief Deputy City Attorney
California State Bar No. 49777
     Office of the City Attorney
     1200 Third Avenue, Suite 1100
     San Diego, California 92101-4100
     Telephone:  (619) 533-5800
     Facsimile:  (619) 533-5856
Attorneys for Defendants
City of San Diego, William Lansdowne, Boyd Long,
Ariel Savage, Justin Mattly, Christopher Sarot,
Daniel Christman, and Bret Righthouse

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SGT. JAVIER COTA, an individual, | ) Case No.  12cv0998 JAH (WMC) |
| Plaintiff, | ) **DEFENDANTS, WILLIAM LANSDOWNE, BOYD LONG, ARIEL SAVAGE, JUSTIN MATTLY, CHRISTOPHER SAROT, DANIEL CHRISTMAN, AND BRET RIGHTHOUSE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION** |
| v. | ) |
| CITY OF SAN DIEGO, CHIEF OF POLICE WILLIAM LANSDOWNE, ASSISTANT CHIEF BOYD LONG, SDPD OFFICER ARIEL SAVAGE, SDPD OFFICER JUSTIN MATTLY, SDPD SERGEANT, SDPD SGT. C.M. SAROT, SDPD LT. DAN CHRISTMAN SDPD SGT. BRET RIGHTHOUSE, and DOES 1-50, inclusive, | ) |
| Defendants. | ) Date:   May 12, 2014<br>) Time:   2:30 p.m.<br>) Judge:  Hon. John A. Houston<br>) Court Room:  13B - Annex |

1

## **TABLE OF CONTENTS**

2   I.    INTRODUCTION ........................................................................... 1

3   II.   STATEMENT OF FACTS ............................................................. 1

4   III.  LEGAL ARGUMENT.................................................................... 7

5      A.   Officers Savage and Mattly are Entitled to Qualified Immunity
          (First and Third Causes of Action) ......................................... 7

6         1.   *Qualified Immunity Standard* ................................................ 7

7         2.   *The Constitutional Right Was Not Violated* ....................... 8

8            (a)   Unlawful Arrest........................................................... 7

9      B.   There Was No Excessive Force Violation Under the Fourth Amendment.
10        (First and Third Causes of Action) ....................................... 10

11     C.   Plaintiff's Claim of Unlawful Custom and Practice (Second Cause of
12        Action) is Unfounded ............................................................. 12

13        1.   *Unless the court finds the actions of the Defendant officers and/or
             Chief Lansdowne unconstitutional, the City cannot be held liable* .. 12

14        2.   *General Law on a Monell Claim* ...................................... 13

15     D.   The Third Cause of Action Pursuant to 42 U.S.C. § 1983 ..................... 14
16
       E.   Fourteenth Amendment.......................................................... 15
17
       F.   Plaintiff's Sixth Cause of Action Has No Support in Fact.................... 16
18
19     G.   Plaintiff's Seventh Cause of Action – Torts in Essence –
          Fails to State a Claim.............................................................. 17

20        1.   *The Claim is superfluous* ................................................. 17

21        2.   *There is no private right under the Penal Code cited* .................... 18

22     H.   Negligence (Ninth Cause of Action) ..................................... 18

23     I.   Tenth Cause of Action – Plaintiff is Unable to Establish That the
24        City Was Deliberately Indifferent as to Training, Supervising,
          Disciplining and Hiring ......................................................... 19
25
       J.   Eleventh Cause of Action ....................................................... 19
26
          1.   *California Civil Code section 52.1* ................................... 21
27
          2.   *California Civil Code section 51.7* ................................... 22
28

K.   Fourth Cause of Action–Assault and Battery–Should be Dismissed ..... 23

L.   Plaintiff's Eighth Cause of Action – Intentional Infliction of Emotional Distress – is Not Supported by the Evidence ........................ 23

M.   Dismissal of Defendants Sarot, Christman, Righthouse, Long and Lansdowne is Appropriate as There Was No Personal Involvement ..... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Albright v. Oliver*
510 U.S. 266 (1994) ...................................................................15

*Anderson v. Creighton*
483 U.S. 635 (1987) .....................................................................9

*Arpin v. Santa Clara Valley Transp. Agency*
261 F.3d 912 (9th Cir. 2001).........................................................8

*Arres v. City of Fresno*
2011 WL 284971 *5 (N.D. Cal)...................................................23

*Asgari v. City of Los Angeles*
15 Cal. 4th 744 (1997)................................................................17

*Austin B. v. Escondido Union Sch. Dist.*
149 Cal. App. 4th 860 (2007).....................................................22

*Baker v. McCollan*
443 U.S. 137 (1979) ...................................................................15

*Barry v. Fowler*
902 F.2d 770 (9th Cir. 1990).........................................................8

*Beck v. City. of Upland*
527 F.3d 853 (9th Cir. 2008).........................................................9

*Bilbrey by Bilbrey v. Brown*
738 F.2d 1462 (9th Cir. 1984).......................................................9

*Bivens v. Six Unknown Named Agents for the Federal Bureau of Narcotics*
456 F.2d 1339 (2d Cir. 1972).........................................................9

*Carter v. Three Unknown Police Officers of Wilmington Police Dep.*
619 F.Supp. 1253 (N.D. Del. 1985) ............................................13

*Chrysler Corp. v. Brown*
441 U.S. 281 (1979) ...................................................................18

*Citizens Capital Corp. v. Spohn*
133 Cal. App. 3d 887 (1982).......................................................16

*City of Canton, Ohio v. Harris*
489 U.S. 378 (1989)....................................................................20

*City of Los Angeles v. Heller*
475 U.S. 796 (1986)....................................................................12

*City of Simi Valley v. Superior Court*
111 Cal. App. 4th 1077 (2003).....................................................21

iii

**Cases**

*Davidson v. City of Westminster*
    32 Cal. 3d 197 (1982)...............................................................................23

*Doctors' Co. v. Superior Court*
    49 Cal. 3d 39 (1989)................................................................................15

*Dubner v. City & County of San Francisco*
    266 F.3d 959 (9th Cir. 2001)...................................................................8

*Duisen v. Administrator and Staff, Fulton St. Hosp., No.1, Fulton, Mo.*
    332 F.Supp. 125 (D.C. Mo. 1971)........................................................13

*East v. City of Richmond*
    2010 WL 4580112 *5 (N.D. Cal)...........................................................23

*Edson v. City of Anaheim*
    63 Cal. App. 4th 1269 (1998)................................................................21

*Ellis v. Blum*
    643 F.2d 68 (2d Cir. 1981).....................................................................13

*Esteem v. City of Pasadena*
    2007 WL 4270360 *23 (C.D. Cal.).................................................17, 18

*Fairley v. Luman*
    281 F.3d 913 (9th Cir. 2002)..................................................................20

*Falvo v. Owasso Independent School District*
    233 F.3d 1203 (10th Cir. 2000)...............................................................8

*Farmers Ins. Exchange v. Superior Court*
    137 Cal. App. 4th 842 (2006)................................................................18

*Fletcher v. Western Nat'l Life Ins. Co.*
    10 Cal. App. 3d 376 (1970)....................................................................24

*Flores v. Satz*
    137 F.3d 1275 (11th Cir. 1998)..............................................................16

*Gerritsen v. de la Madrid Hurtado*
    819 F.2d 1511 (9th Cir. 1987)................................................................14

*Gomez v. City of Whittier*
    211 Fed.Appx. 573 (9th Cir. 2006).......................................................21

*Gonzaga University v. Doe*
    536 U.S. 273 (2002)..................................................................................8

*Gonzalez v. Pierce County*
    2005 WL 2088367 *9 (W.D. Wash.).....................................................12

*Graham v. Connor*
    490 U.S. 386 (1989).........................................................................11, 15

## Cases

*Griffin v. Breckenridge*
    403 U.S. 88 (1971) ................................................................... 14

*Hansen v. Black*
    885 F.2d 642 (9th Cir. 1989) ...................................................... 11

*Harvey v. City of South Lake Tahoe*
    2011 WL 3501687 *7 (E.D. Cal.) ................................................ 18

*Hillblom v. County of Fresno*
    539 F.Supp.2d 1192 (2010) ...................................................... 18

*Hisamatsu v. Niroula*
    2009 WL 4456392 *5-6 (N.D. Cal. Oct. 22, 2009) ....................... 18

*Hope v. Pelzer*
    536 U.S. 730 (2002) ................................................................. 8

*Hupp v. City of Walnut Creek*
    389 F. Supp. 2d 1229 (N.D. Cal. 2005) .................................... 12

*Jones v. Kmart Corp.*
    17 Cal. 4th 329 (1998) ............................................................ 21

*Karim-Panahi v. Los Angeles Police Dept.*
    839 F.2d 621 (9th Cir. 1988) .................................................... 16

*Kirkpatrick v. City of Los Angeles*
    803 F.2d 485 (9th Cir. 1986) .................................................... 13

*Laczko v. Jules Meyers, Inc.*
    276 Cal. App. 2d 293 (1969) .................................................... 17

*LaLonde  v. County of Riverside*
    204 F.3d 947 (9th Cir. 2000) .............................................. 11, 12

*Leer v. Murphy*
    844 F.2d 628 (9th Cir. 1988) .................................................... 25

*LSO, Ltd. v. Stroh*
    205 F.3d 1146 (9th Cir. 2000) .................................................... 8

*Mahaney v. Warren County*
    206 F.3d 770 (8th Cir. 2000) .................................................... 16

*McCalden v. California Library Ass'n*
    955 F.2d 1214 (9th. Cir. 1992) ................................................ 14

*Merritt v. County of Los Angeles*
    875 F.2d 765 (9th Cir. 1989) .................................................... 20

*Michigan v. DeFillippo*
    443 U.S. 31 (1979) ................................................................... 8

v

**Cases**

*Monell v. Department of Social Services*
    436 U.S. 658 (1978) ..............................................................13, 20, 21

*Moradi-Shalal v. Fireman's Fund Ins. Companies*
    46 Cal. 3d 287 (1988) .....................................................................18

*Nava v. Seadler*
    2011 WL 6936341 *3 (N.D. Cal)....................................................11

*Orin v. Barclay*
    272 F.3d 1207 (9th Cir. 2001)........................................................15

*Palmer v. Sanderson*
    9 F.3d 1433 (9th Cir. 1993)............................................................11

*Petherbridge v. Altadena Fed. Sav. & Loan Assn.*
    37 Cal. App. 3d 193 (1974)............................................................16

*Quintanilla v. City of Downey*
    84 F.3d 353 (9th Cir. 1996)............................................................12

*Randle v. City of San Francisco*
    186 Cal. App. 3d 449 (1986)..........................................................17

*Rezek v. City of Tustin*
    2012 WL 5829928 *7 (S.D. Cal.) ...................................................18

*Rezek v. City of Tustin*
    2012 WL 5829928 *7*8 (C.D. Cal) .................................................17

*Rux v. Starbucks Corp.*
    2007 WL 1470134 *10 (E.D. Cal.) .................................................19

*Samon v. Robbins*
    173 F.3d 1150 (9th Cir. 1999)........................................................23

*Saucier v. Katz*
    533 U.S. 194 (2001) .........................................................................8

*Selby Realty Co. v. City of San Buenaventura*
    10 Cal. 3d 110 (1973).....................................................................16

*Sever v. Alaska Pulp Corp.*
    978 F.2d 1529 (9th Cir. 1992)...................................................14, 15

*Shoyoye v. County of Los Angeles*
    203 Cal. App. 4th 947 (2012).........................................................22

*Smiddy v. Varney*
    665 F.2d 261 (9th Cir. 1981)............................................................9

*South Bay Building Enterprises, Inc. v. Riviera Lend-Lease, Inc.*
    72 Cal. App. 4th 1111 (1999).........................................................17

**Cases**

*Tovar v. Southern Cal. Edison Co.*
    201 Cal. App. 3d 606 (1988)..............................................................18

*U.S. ex. rel. Knapp v. Calibre Systems, Inc.*
    2011 WL 3204454 *1 (C.D. Cal.)......................................................19

*U.S. v. Garza*
    980 F.2d 546 (9th Cir. 1992)...............................................................9

*U.S. v. Potter*
    895 F.2d 1231 (9th Cir. 1990)..............................................................9

*United Brotherhood of Carpenters and Joiners of America v. Scott*
    463 U.S. 825 (1983) ..........................................................................14

*Vance v. Peters*
    97 F.3d 987 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997)....................25

*Vikco Ins. Services, Inc. v. Ohio Indemnity Co.*
    70 Cal. App. 4th 55 (1999)................................................................18

*Whitfield v. Tri-Metropolitan Transp. Dist.*
    2009 WL 839484 *11 (D. Or.)...........................................................19

*Willis v. City of Los Angeles*
    57 Fed.Appx. 283 (9th Cir. 2002) ....................................................18

*Wong v. Tai Jing*
    189 Cal. App. 4th 1354 (2010)..........................................................19

*Wood v. Gutierrez*
    2012 WL 6203170 (D. Or. ) .......................................................12, 19

**Statutes**

Cal. Civ. Code § 2924(h) ....................................................................17
Cal. Civ. Code § 51.7.........................................................................22
Cal. Civ. Code § 52.1.........................................................................21
Cal. Civ. Code § 52.1(b).....................................................................20
Cal. Gov't Code § 821.6......................................................................16
Penal Code § 647(f) ......................................................................1, 24

**Other Authorities**

Restatement (Second) of Torts § 46 com.j. (1965) ................................................23
Witkin, Summary of California Law, vol.5, *Torts* § 451 (10th ed. 2005) ...............23

# I

## INTRODUCTION

The instant matter stems from a confrontation and subsequent arrest of Plaintiff, Javier Cota, by two San Diego Police Officers for a 647(f) violation (drunk in public). Plaintiff's twenty-three page complaint contains eleven causes of action which include: Violation of Civil Rights (42 U.S.C. § 1983), *Monell Claim* (42 U.S.C. § 1983), Violation of Civil Rights (42 U.S.C. § 1985(3)); Assault and Battery, False Arrest, Civil Conspiracy, Torts in Essence, Intentional Infliction of Emotional Distress, Negligence, Negligent Employment, Banes Civil Rights Claim. There are eight Defendants, including seven individual Defendants, and the City of San Diego.

# II

## STATEMENT OF FACTS

On June 4, 2011, at approximately 2:54 a.m., Officers Justin Mattly and Ariel Savage were on patrol in a marked police vehicle. (*See Exhibit A – Declaration of Ariel Savage "Savage Dec"; Exhibit B – Declaration of Justin Mattly "Mattly Dec"* ). They were driving northbound on 5th Ave. in the # 1 lane behind a pedicab with two male and two female passengers.  The pedicab stopped in the traffic lane and let the two females out.  (*Ex. A-Savage Dec; Ex. B-Mattly Dec*). One of the women walked to the drivers' side of a parked vehicle and appeared to be entering it to drive from the area.  She appeared intoxicated.  (*Ex. A-Savage Dec; Ex. B-Mattly Dec*). The officers parked their vehicle directly behind the pedicab. (*Ex. A-Savage Dec; Ex. B-Mattly Dec* ). Officer Savage put on his overhead flashing red and blue bar lights on his patrol car, stopped the vehicle and got out. (*Ex. A-Savage Dec; Ex. B-Mattly Dec*). Officer Savage asked the woman if she intended to drive the vehicle.  (*Ex. A-Savage Dec; Ex. B-Mattly Dec*). She said she did intend to drive home. (*Ex. A-Savage Dec*). The patrol vehicle was a standard black and white San Diego Police vehicle with bar lights on the top of the car. Both officers were in full

1

1  San Diego Police uniforms, dark blue with police badge and a belt holding holster

2  and weapon, handcuffs, radio and expandable baton. Both the vehicle and the

3  officers would be clearly identified as San Diego Police Officers. (*Ex. A-Savage*

4  *Dec; Ex. B-Mattly Dec*).

5       Because the pedicab was impeding traffic, Officer Mattly told the driver to

6  move down the road.  (*Ex. A-Savage Dec; Ex. B-Mattly Dec*). One of the males,

7  later identified as Javier Cota told Officer Mattly that they were not leaving as they

8  were waiting for the females.  (*Ex. B-Mattly Dec*). The woman told Officer Mattly

9  that they did not intend to get back into the pedicab.  (*Ex. B-Mattly Dec*). Officer

10  Mattly again told the pedicab driver to move down the road.  (*Ex. B-Mattly Dec*).

11  Cota began yelling towards Officer Savage alleging that he was harassing the

12  females. (*Ex. A-Savage Dec; Ex. B-Mattly Dec*). Cota said, "Why are you being

13  such dickweeds to her?" (*Ex. A-Savage Dec; Ex. B-Mattly Dec*).  (According to

14  Cota, he addressed the officers as "dipshits*." See Exhibit C – Deposition of Javier*

15  *Cota "Cota Depo," p. 150, ll. 2-5*). Cota claims he thought the two officers were

16  Target security guards, although one of whom, Officer Mattly, was within fifteen

17  feet of Cota when he ordered the pedicab to move on down the road. (*Ex C – Cota*

18  *Depo, p. 144, l. 15-25; p. 145, ll. 1-19*). According to Cota, he first realized the

19  Defendants were police officers when the black officer grabbed hold of him. (*Ex. D*

20  *– Interview of Javier Cota by Mesa, Arizona Internal Affairs dated June 16, 2011,*

21  *p. 64, ll. 17-21*). In reality, it was Officer Mattly, a caucasian officer, who

22  handcuffed Cota. Cota claims he did not see the San Diego Police vehicle even

23  though it was parked within 20 feet of the pedicab, with the overhead bar flashing

24  red and blue lights. (*Ex. A-Savage Dec; Ex. B-Mattly Dec*).

25       Officer Mattly noted that, because of the yelling from Cota, Officer Savage

26  had to ask the female the same questions several times.  (*Ex. A-Savage Dec; Ex. B-*

27  *Mattly Dec*). Officer Mattly told Cota that he was intoxicated and if he didn't leave

28  he would be arrested. (*Ex. B-Mattly Dec*). Cota said, "Well take me to jail you

2

fucking dickweeds!"  Cota was instructed to get out of the pedicab.  (*Ex. B-Mattly Dec*).At one point, Cota stated that he just wanted to find his car so he could leave. (*Ex. B-Mattly Dec*). Officer Mattly told Cota he was too intoxicated to drive and that he was going to be placed under arrest. (*Ex. B-Mattly Dec*). Officer Mattly noted that Cota displayed the classic signs of being intoxicated – smell of alcohol, slurred speech and was creating a disturbance. (*Ex. B-Mattly Dec*).Cota was arrested for Penal Code section 647(f) – public intoxication, as he was obviously intoxicated and, due to his belligerent behavior, was in such a condition that he was unable to care for his own safety or the safety of others. (*Ex. B-Mattly Dec*). Officer Mattly had been trained in recognizing the signs and symptoms of individuals under the influence of alcohol for purposes of driving under the influence (DUI) and/or being drunk in public. His training included instruction at the San Diego Regional Police Academy, as well as on-the-job training. As of June 4, 2011, Officer Mattly had been involved in approximately 200-250 arrests for being under the influence of alcohol. (*Ex. B-Mattly Dec*).

In addition to his overall appearance, Cota continued to disrupt the attempted sobriety investigation of the women by Officer Savage. (*Ex. A-Savage Dec; Ex. B-Mattly Dec*).  Officer Mattly has worked in the Gaslamp District since 2006. (*Ex. B-Mattly Dec*). It was his experience that those individuals who are intoxicated and are, at the same time, aggressive and belligerent towards uniformed officers are highly likely to have confrontational incidents with other civilians in the area. (*Ex. B-Mattly Dec*). The arrest of Mr. Cota for Penal Code section 647(f) – public intoxication, was justified given the circumstances. The observations of Officer Mattly support the arrest. Such factors as the strong order of alcohol, slurred speech, refusal to follow commands and belligerent behavior are all indicators of intoxication. These behavioral and physical symptoms are readily recognized by experiences officers. Moreover, the above-described symptoms and Mr. Cota's declaration that he intended to find his car and drive to a hotel is clear proof that

3

1  Cota was a danger to himself, as well as others. (*Ex. B-Mattly Dec;Ex. E -*

2  *Declaration of Sgt. Christopher Sarot "Sarot Dec;" Ex. F- Declaration of Captain*

3  *Daniel Christman,"Christman Dec"; Ex. L-Declaration of Elmer Pellegrino*

4  *"Pellegrino Dec"*).

5        Officer Mattly handcuffed Cota and double locked the cuffs.  (*Ex. B-Mattly*

6  *Dec*). Cota was placed in the patrol car and transported to detox. (*Ex. A-Savage*

7  *Dec; Ex. B-Mattly Dec*).Within minutes, Cota had passed out in the backseat of the

8  patrol car. (*Ex. A-Savage Dec; Ex. B-Mattly Dec*). (Subsequent to his arrest, Cota

9  admitted to having 5-6 mixed alcohol drinks that night. He also admitted he felt the

10  effects of the alcohol and felt drunk and intoxicated (*Ex. C – Cota Depo, p. 118, ll.*

11  *7-17; Ex. D-Mesa, Arizona Internal Affairs interview of Cota, p. 56, ll. 6-9; Ex. G –*

12  *Declaration of Bret Righthouse "Righthouse Dec"*). At the Detox Center, Cota

13  demanded to speak with a supervisor. (*Ex. A-Savage Dec; Ex. B-Mattly Dec*).

14        At Headquarters, Sgt. Sarot walked over to the patrol car where Cota was

15  seated to talk to him.  (*Ex. E - Sarot Dec*).  As he got close to the car, it appeared

16  that Cota had passed out as his eyes were closed and his head was leaning up

17  against the door.  (*Ex. E-Sarot Dec*).Sgt. Sarot opened the door making sure Cota

18  did not fall out. (*Ex. E-Sarot Dec*). Sgt. Sarot immediately smelled an intense

19  alcohol odor emanating from Cota. (*Ex. E-Sarot Dec*). Sgt. Sarot introduced

20  himself. (*Ex. E-Sarot Dec*). Cota stated that he had been falsely arrested. (*Ex. E-*

21  *Sarot Dec*).  He stated that the officers had no right to stop, detain or arrest him.

22  (*Ex. E-Sarot Dec*).  Sgt. Sarot asked him to articulate why he felt this way. (*Ex. E-*

23  *Sarot Dec*). Cota was unable to give a lucid answer. (*Ex. E-Sarot Dec*). During this

24  conversation, it was apparent to Sgt. Sarot that Cota was heavily intoxicated. He

25  was slurring, his eyes were bloodshot and he reeked of alcohol. (*Ex. E-Sarot Dec*).

26  Cota's responses to Sgt. Sarot's questions were non-specific. (*Ex. E-Sarot Dec*). It

27  appeared Cota was unable to form a cognizant response. (*Ex. E-Sarot Dec*).

28        Cota's appearance, demeanor and responses demonstrated to Sgt. Sarot that

4

1   Cota's level of intoxicatication placed him at risk for his own safety, as well as

2   others, if allowed to remain free on the streets of San Diego. (*Ex. E-Sarot Dec*).

3   Cota told Sgt. Sarot that the officers were demeaning to his female companions.

4   Sgt. Sarot asked Cota to tell him specifically what the officers said to the women

5   that was demeaning. (*Ex. E-Sarot Dec*).  Cota would not be specific simply saying

6   that the officers weren't nice to them. (*Ex. E-Sarot Dec*). Cota never stated that the

7   officers had been "hitting on" the women or denied that he was intoxicated.  (*Ex. E-*

8   *Sarot Dec*). Lt. Chrisman (who has since been promoted to Captain) observed the

9   conversation between Sgt. Sarot and Cota. Sgt. Sarot always maintained a

10  professional manner, even though Cota repeatedly interrupted him and, at one

11  point, called Sgt. Sarot a "dickhead." (*Ex. F- Christman Dec*). Cota told Sgt. Sarot

12  that he wanted to talk to Sgt. Sarot's supervisor.  (*Ex. E-Sarot Dec, Ex. F-*

13  *Christman Dec*).

14        In response, Lt. Christman went over and spoke with Cota and was certain he

15  was intoxicated. (*Ex. F-Christman Dec*). Cota had bloodshot, watery red eyes, his

16  body language appeared angry but at the same time fatigued. (*Ex. F-Christman*

17  *Dec*).  Cota had the appearance of a drunk that would pass out versus a belligerent

18  falling down drunk.  (*Ex. F-Christman Dec*). Lt. Christman identified himself as the

19  Watch Commander. (*Ex. F-Christman Dec*).  Lt. Christman asked Cota if he had a

20  complaint.  (*Ex. F-Christman Dec*). Cota responded that the officers did not have

21  probable cause to arrest him.  (*Ex. F-Christman Dec*).  Lt. Christman asked Cota if

22  there was any other complaint.  (*Ex. F-Christman Dec*). Cota stated that there

23  wasn't. (*Ex. F-Christman Dec*). Cota did not tell Lt. Christman that the officers

24  acted inappropriately towards the females. (*Ex. F-Christman Dec*).  Lt. Christman

25  stated that Cota did not make eye contact with him and instead looked straight

26  ahead. (*Ex. F-Christman Dec*).

27        Lt. Christman concluded his conversation with Cota and filled out a Citizens

28  Complaint Form (CCF) and submitted it to Internal Affairs that morning. (*Ex. F-*

1  *Christman Dec*).

2      Based on the CCF submitted by Lt. Christman, an internal affairs case was

3  opened and investigated by Det. Sgt. Bret Righthouse. (*Ex. G-Righthouse Dec*).

4  Javier Cota filed a Citizens Complaint on June 4, 2011. (*Ex. G-Righthouse Dec*).

5  Cota alleged that he was arrested for PC 647(f) and that Officers Mattly and Savage

6  did not have probable cause to arrest him. (*Ex. G-Righthouse Dec*). He also alleged

7  that his handcuffs were not double locked, that Officer Savage used unprofessional

8  language when addressing Jaime Cota, and the officers accelerated and braked

9  abruptly while driving to the Detox center, they also turned their radio up and

10  laughed in an attempt to make fun of him. (*Ex. G-Righthouse Dec*).

11      Det. Sgt. Righthouse interviewed Cota on June 16, 2011. (*Ex. G-Righthouse*

12  *Dec*). At that time, Cota claimed to have drank 5-6 vodka or rum drinks that

13  evening prior to his arrest and admitted he was feeling the effects of the alcohol.

14  (*Ex. G-Righthouse Dec*). Cota claimed that the seats on the pedicab faced towards

15  each other and he was facing westbound and had to turn his head to see the police

16  car.  (When in fact the seats were positioned differently as they were horizontal to

17  the sides rather than perpendicular as described by Cota). (*Ex. G-Righthouse Dec*).

18  Cota claimed that the females stated that they wanted to stop at their car to retrieve

19  their purse to call one of the girls' sister so that they could be picked up as they had

20  too much to drink.  (*Ex. G-Righthouse Dec*). Cota also claimed that the officers

21  stopped to "hit on" the two females. (*Ex. G-Righthouse Dec*). Cota stated he

22  thought the officers were security guards. (*Ex. G-Righthouse Dec*). Cota also

23  claimed that he heard the female state "not interested" and assumed that the officer

24  made an inappropriate comment towards her, although he did not hear the

25  comment. (*Ex. G-Righthouse Dec*).  Incredibly, Cota claimed he was arrested by the

26  "black officer," Officer Savage, who is African American, 5'4" tall and weighs 146

27  lbs. When, in fact, he was arrested by Officer Mattly who is Caucasian and stands

28  5'10" and weighs 180 lbs. (*Ex. A-Savage Dec; Ex. B-Mattly Dec*). In fact, Cota

6

asserted the only officer he spoke with was the "black officer." (*Ex. D-Interview of Javier Cota, p. 64, ll. 17-21; Ex. H - Citizens Review Board decision, p. 7*). However, all of the initial contact was with Officer Mattly, the white officer. (*Ex. B-Mattly Dec*) Cota stated that the black officer told Jaime Cota that he better "shut the fuck up" or he would be arrested too. (*Ex. G-Righthouse Dec*).  Cota maintained the officer didn't double lock the cuffs.  (*Ex. G-Righthouse Dec*). He alleged that at detox he complained about this and the officer adjusted the cuffs and double locked them. (*Ex. G-Righthouse Dec*).

Det. Sgt. Righthouse interviewed Cota's nephew, Jaime Cota, on June 16, 2011.  (*Ex. G-Righthouse Dec*). Det. Sgt. Righthouse also interviewed both Officers Mattly and Savage. (*Ex. G-Righthouse Dec*).  Det. Sgt. Righthouse obtained the surveillance video from Henry's Pub in the 600 block of 5th Avenue. (*Ex. G-Righthouse Dec*). The video captures the footage of Cota and his companion in the pedicab, as well as the San Diego Police patrol vehicle as it passed Henry's Pub. (*Ex. G-Righthouse Dec*).  Det. Sgt. Righthouse spoke with approximately 50 pedicab operators in an attempt to locate the operator of Cota's pedicab. (*Ex. G-Righthouse Dec*). Det. Sgt. Righthouse determined the arrest of Cota was appropriate. (*Ex. G-Righthouse Dec*).  The remaining complaints asserted by Cota were determined to be unfounded. (*Ex. G-Righthouse Dec*).

Cota's complaint was also reviewed by the Citizens Review Board Team 2. The Citizens Review Board agreed with the findings of Det. Sgt. Righthouse's investigation and found the arrest legal and justified and the remaining issues unfounded. (*Ex. H – Citizens Review Board findings*).

## III

## <u>LEGAL ARGUMENT</u>

A.   **Officers Savage and Mattly are Entitled to Qualified Immunity (First and Third Causes of Action).**

1.   *Qualified Immunity Standard.*

---

7

The Supreme Court has set forth a two-part test for the qualified immunity analysis. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730 (2002)(citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If a constitutional right would have been violated under the plaintiff's version of the facts, "the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201.

In a Section 1983 action it is the plaintiff who bears the burden of (1) establishing that the defendant's actions violated a Federal Constitutional Right; and (2) that the right was clearly established at the time of the conduct at issue. *Falvo v. Owasso Independent School District*, 233 F.3d 1203, 1218-19 (10th Cir. 2000), overruled on different grounds by *Gonzaga University v. Doe*, 536 U.S. 273 (2002)); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000).

### 2.    *The Constitutional Right Was Not Violated.*

#### (a)    <u>Unlawful Arrest.</u>

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City & County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). A showing of probable cause is a defense to a false arrest claim under section 1983. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 920 (9th Cir. 2001).

"Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that 'the suspect has committed an offense.'" *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990)(quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "In determining whether there is probable cause to arrest, it is not enough to consider only certain facts; rather, the existence of probable cause is determined by reference to all of the fact in the police officer's possession." *U.S. v. Garza*, 980

8

1  F.2d 546, 550 (9th Cir. 1992). "Probable cause exists when, 'under the totality of

2  the circumstances known to the arresting officers, a prudent person would have

3  concluded that there was a fair probability that [the defendant] had committed a

4  crime.'" *U.S. v. Potter*, 895 F.2d 1231, 1233-34 (9th Cir. 1990).

5        In the context of a qualified immunity application, it is not necessary that

6  there actually be a finding of probable cause for the officer to prevail. "In the

7  Fourth Amendment context, it is 'inevitable that law enforcement officials will in

8  some cases reasonably but mistakenly conclude that  probable cause is present" and

9  "…in such cases those officials – like other officials who act in ways they

10 reasonably believe to be lawful-should not be held personally liable." *Anderson v.*

11 *Creighton*, 483 U.S. 635, 641 (1987). As the Ninth Circuit aptly noted in *Smiddy v.*

12 *Varney*, 665 F.2d 261 (9th Cir. 1981), overruled on different grounds by *Beck v.*

13 *City. of Upland*, 527 F.3d 853, 865 (9th Cir. 2008), "[i]t is necessary that police

14 officers be immune when they reasonably believe that probable cause existed, even

15 though it is subsequently concluded that it did not, because they 'cannot be

16 expected to predict what federal judges frequently have considerable difficulty in

17 deciding and about which they frequently differ among themselves.'" *Id*. at 266

18 (quoting *Bivens v. Six Unknown Named Agents for the Federal Bureau of*

19 *Narcotics*, 456 F.2d 1339, 1349 (2d Cir. 1972). Thus, a police officer is entitled to

20 qualified immunity from suit for damages arising out of a Fourth Amendment

21 violation if a reasonable officer possessing the same facts as the defendant officer

22 could have reasonably believed that the search or arrest was supported by probable

23 cause even if a court later determines it was not. *Bilbrey by Bilbrey v. Brown*, 738

24 F.2d 1462, 1467 (9th Cir. 1984).

25       In the instant matter, the evidence possessed by the defendants at the time of

26 the arrest overwhelmingly supported a probable cause finding, or at the very least a

27 reasonable officer would have believed probable cause for the arrest existed.

28 Plaintiff's physical appearance, bloodshot and watery eyes, the smell of alcohol, his

9

body posture, belligerent behavior, calling police officers "dipshits," assuming the officers were Target security officers, even though in SDPD uniform, not seeing an SDPD vehicle with flashing lights twenty feet from him, and identifying the arresting officer as black when he was Caucasian.  Finally, Plaintiff admitted on two occasions that he was intoxicated. Also, two senior officers, Sgt. Sarot and Lt. Christman, at the Headquarters Sallyport observed obvious traits establishing intoxication. Both the arresting officers, as well as the senior officers who observed Cota at the Headquarters Sally Port concluded that Cota was intoxicated. Finally, Defendants' police procedures expert, Elmer Pellegrino, whose long career as a police officer and his long stint as Director of the Fullerton Police Academy opines based upon the record that Mr. Cota was both intoxicated and a danger to himself and others. (*See Declaration of Elmer Pellegrino, Ex. L*) Probable cause for an arrest for public intoxication is met when officer observed smell of alcohol on breath, slurred speech and bloodshot eyes. *Acevedo v. State of CA*, 2008 WL 436929 (E.D.CA).

Probable cause was overwhelming or, at a minimum, a reasonable officer could have believed Plaintiff was intoxicated and a danger to himself and others.

**B.    There Was No Excessive Force Violation Under the Fourth Amendment. (First and Third Causes of Action.**

In his complaint, Cota claims "Cota's handcuffs were not double-cuffed as protocol requires. As a result, his wrists were bruised from being tossed around from the erratic driving." (*Plaintiff's Complaint, p. 18, ll. 14-15*).  The handcuffs, however, were double locked and were checked by Officer Mattly both when they were originally placed on Cota and again when at Detox.

As importantly, Cota readily concedes he never complained about the handcuffs being too tight either when they were originally placed on him or on the way to Detox Center. According to Cota, it was only when he got to Detox that he complained that the handcuffs were too tight and then the Officers immediately

10

1  loosened them to his satisfaction. Plaintiff did not receive or seek medical

2  assistance for any alleged injury because of the handcuffs. (*Ex. B – Mattly Dec; Ex.*

3  *C – Cota Depo, p. 176, ll. 10-20*).

4        The case law in this circuit affirms that tight handcuffs may constitute

5  excessive force, these cases do not create a per se rule for excessive force. Rather,

6  the court weighed the facts against the legal standard of reasonableness. *Nava v.*

7  *Seadler,* 2011 WL 6936341 *3 (N.D. Cal); *Palmer v. Sanderson*, 9 F.3d 1433, 1436

8  (9th Cir. 1993) (fastening handcuffs so tightly as to cause pain and bruising, and

9  refusing to loosen the handcuffs when told of pain, constitutes excessive force). The

10  Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989) set forth the standard in

11  excessive force cases, should be analyzed under the reasonableness standard of the

12  Fourth Amendment to the United States Constitution.

13        The Court held that "reasonableness" inquiry in an excessive force case is an

14  objective one: "the question is whether the officers' actions are 'objectively

15  reasonable' in light of the facts and circumstances confronting them, without regard

16  to their underlying intent or motivation." *Id.* at 397.

17        Here, Plaintiff what was placed in handcuffs upon his arrest at the 600 block

18  of 5th Avenue and E Street. (*Ex. B-Mattly Dec*). During the very short ride,

19  approximately 1.2 miles to Detox, Cota never complained to the Officers that the

20  handcuffs were too tight. (*Ex. A-Savage Dec; Ex. B-Mattly Dec*). Upon arrival at

21  Detox, Plaintiff testified that he informed the Officers of the tight handcuffs. When

22  notified, the Officers immediately loosened the handcuffs and Plaintiff experienced

23  no further problems. These facts are distinct from those cases where the courts have

24  found excessive force, such as when handcuffs caused severe injury and refused to

25  loosen them when requested. *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989)

26  (severe bruising requiring medical care); *LaLonde  v. County of Riverside*, 204 F.3d

27  947 (9th Cir. 2000) (handcuffed the plaintiff tightly and refused to loosen the

28  handcuffs even after the plaintiff complained.

The facts of the instant matter are more in line with *Wood v. Gutierrez*, 2012 WL 6203170 (D. Or. ) There, handcuffs were placed on the plaintiff on two occasions.  The record reflected that Officer Gutierrez loosened the handcuffs during the first ride to Hermiston Police Station and no other complaints were made until they arrived at the jail. The court found Officer Gutierrez was not aware of the handcuffs causing pain nor did he refuse to loosen them. Thus, the court concluded plaintiff had not established that the type or degree of force used in handcuffing was unreasonable. See also, *Gonzalez v. Pierce County*, 2005 WL 2088367 *9 (W.D. Wash.) (dismissed excessive force claim, plaintiff never complained to officers);  *Hupp v. City of Walnut Creek*, 389 F. Supp. 2d 1229, 1232-1233 (N.D. Cal. 2005)(no excessive force found absent evidence of injury or of a complaint that was ignored).

Nothing in this record suggests that the Officers were aware of any pain being inflicted by the handcuffs until Plaintiff reached the Detox Center. There, the handcuffs were loosened. Hence, the Officers actions were objectively reasonable in viewing all of the circumstances.

**C.    Plaintiff's Claim of Unlawful Custom and Practice (Second Cause of Action) is Unfounded.**

> **1.    *Unless the court finds the actions of the Defendant officers and/or Chief Lansdowne unconstitutional, the City cannot be held liable*.**

Chief Lansdowne and/or the City of San Diego cannot be held liable pursuant to a *Monell* cause of action, Plaintiff's Second and Tenth Causes of Action, unless the Court were to find the officer's actions for the arrest or excessive force unconstitutional. *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (no damages may be awarded against a municipal corporation based upon the actions of one of its officers when no constitutional harm was inflicted). This is true even if Department regulations authorized constitutionally excessive force. *Id*.

12

**2.      *General Law on a Monell Claim*.**

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that municipalities were "persons" under 42 U.S.C. section 1983 and thus, could be held liable for causing a constitutional violation. Liability for a police officer's actions at the scene under section 1983 is solely personal. *Duisen v. Administrator and Staff, Fulton St. Hosp., No.1, Fulton, Mo.*, 332 F.Supp. 125 (D.C. Mo. 1971). Since liability under section 1983 is personal, the doctrine of respondeat superior is unavailable to impose vicarious liability under this section on another. *Ellis v. Blum*, 643 F.2d 68 (2d Cir. 1981). A local government cannot be found liable under section 1983 based on a theory of respondeat superior alone. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). In order to maintain a section 1983 action against a governmental entity, plaintiff must *allege and present* evidence that the allegedly unconstitutional activities of the police officer were pursuant to "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the entity's] officers." *Id*. at 690; see also *Kirkpatrick v. City of Los Angeles*, 803 F.2d 485, 491 (9th Cir. 1986); *Carter v. Three Unknown Police Officers of Wilmington Police Dep.*, 619 F.Supp. 1253, 1361 (N.D. Del. 1985).

Plaintiff alleges in his complaint that Defendant Lansdowne promulgated these unconstitutional policies when he disbanded the Professional Standards Unit (PSU). Rather than discourage investigation of police misconduct, Chief Lansdowne combined the PSU with Internal Affairs. He further ordered the original investigation be sent to a specialized unit, i.e., if a claim of sexual misconduct was made, it would be investigated by the Sex Crimes Unit. Thus, the investigators were now more efficient and more professional. (*Ex. I – Declaration of William Lansdowne "Lansdowne Dec"*).

Plaintiff also recites in his complaint a number of unrelated incidents of alleged police misconduct by different officers. Plaintiff attempts to cobble together

13

isolated and distinct episodes, all involving separate officers, and claim a custom and policy existed for wrongdoing within the SDPD. What Plaintiff doesn't disclose is that, in virtually all of these cases, the officers were charged, disciplined, forced to retire or are in litigation. (*Ex.I –Lansdowne Dec*).  The SDPD took immediate and appropriate action once alleged or improper conduct was disclosed. (*Ex.I – Lansdowne Dec*).   Hence, Plaintiff will not be able to establish a customer policy promulgated by Chief Lansdowne or the SDPD.

**D.      The Third Cause of Action Pursuant to 42 U.S.C. § 1985(3)**.

To establish a claim for a violation of 42 U.S.C. section 1985(3), "a plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of laws, or a equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of United States." *Sever v. Alaska Pulp Corp*., 978 F.2d 1529, 1536 (9th Cir. 1992)(citing *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828-29 (1983)).

To establish the second element of a Section 1985(3) claim, a plaintiff must allege improves at the deprivation of the right question was "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators actions.'" *Id*. (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see also McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th. Cir. 1992)(" the plaintiff must be a member of the class that require special federal assistance protecting it civil rights.")(quoting *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1519 (9th Cir. 1987)).  The Ninth Circuit has held that "§ 1985(b) extends 'beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights.'" *Orin v. Barclay*, 272 F.3d 1207, 1217

14

1    n.4 (9th Cir. 2001)(quoting *Sever*,978 F.2d at 1536)).

2         Absent from his complaint or deposition testimony is any allegation that the

3    conspiracy was motivated by some racial or otherwise class-based discriminatory

4    animus.

5    **E.    Fourteenth Amendment.**

6         Plaintiff is unable to pursue independent Fourteenth Amendment claims

7    based on allegations relating to his superseding Fourth Amendment claims.

8    "Section 1983 'is not itself a source of steps the substantive rights,' but merely

9    provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v.*

10   *Oliver*, 510 U.S. 266, 271 (1994)(quoting *Baker v. McCollan*, 443 U.S. 137, 144,

11   n.3 (1979)).  A plaintiff must identify the specific constitutional rights allegedly

12   infringed. *Albright*, 510 U.S. at 271. "Where a particular Amendment 'provides an

13   explicit textual source of constitutional protection'" against particular sort of

14   government behavior, "that Amendment, not the more generalized notion of

15   'substantive due process,' must be the guide of analyzing these claims." *Albright*,

16   510 U.S. at 273 (quoting *Graham v. Connor*, 490 U.S. at 395.)

17        Claims involving the use of force in effecting interest are governed solely by

18   the Fourth Amendment. *Graham v. Connor*, 490 U.S. at 396. This tenet is equally

19   applicable to a wrongful arrest. A substantive due process analysis is, therefore,

20   appropriate only if plaintiff's claim is not covered by the Fourth Amendment.

21   **F.    Plaintiff's Sixth Cause of Action Has No Support in Fact.**

22        Plaintiff asserts that each of the Defendants agreed to assault, falsely arrest,

23   falsely imprison, and intentionally injure Mr. Cota. (Plaintiff's complaint, PARA.

24   55, LL. 9-12).  The elements of an action for civil conspiracy are (1) formation and

25   operation of the conspiracy and (2) damage resulting to plaintiff (3) from an act

26   done in furtherance of the common design. *Doctors' Co. v. Superior Court*, 49 Cal.

27   3d 39, 44 (1989). To maintain such an action, "there must be alleged an act in

28   furtherance of the conspiracy which is itself a tort." *Selby Realty Co. v. City of San*

---

15

1    *Buenaventura*, 10 Cal. 3d 110, 127 (1973). Civil conspiracy is not a tort but rather a

2    theory of joint liability whereby all who cooperate in another's wrong may be held

3    liable. *Petherbridge v. Altadena Fed. Sav. & Loan Assn*., 37 Cal. App. 3d 193, 202,

4    n.3 (1974). In a civil case, liability attaches only for action taken pursuant to the

5    conspiracy. *Citizens Capital Corp. v. Spohn,* 133 Cal. App. 3d 887, 889 (1982).

6    Plaintiff offers no evidence that any of the Defendants were involved in a

7    conspiracy.

8        Plaintiff's assumptions, conclusions, and conjecture are insufficient to

9    support a civil conspiracy theory. Without factual evidence, Plaintiff is unable to

10   maintain a civil conspiracy theory against the Defendants. A mere allegation of

11   conspiracy without factual specificity is insufficient to support a claim. *Karim-*

12   *Panahi v. Los Angeles Police Dept*., 839 F.2d 621, 626 (9th Cir. 1988).  Allegations

13   and rank conjecture do not suffice for a civil conspiracy. *Mahaney v. Warren*

14   *County*, 206 F.3d 770, 772 (8th Cir. 2000).

15        The insinuation that the Defendants did not follow up once Plaintiff told both

16   Lansdowne and Long that he was falsely arrested also fails to support his claim.

17   The mere failure to investigate fully does not constitute a federal civil rights

18   violation. *Flores v. Satz*, 137 F.3d 1275, 1278 n.7 (11th Cir. 1998).

19        Plaintiff's claim on its face fails as Defendants Sarot, Christman, Righthouse,

20   Long and Lansdowne were not present when the claimed actions allegedly took

21   place and, therefore, they could not have conspired to or agreed to the wrongful

22   actions. Plaintiff also alleges that in furtherance of the conspiracy, Defendants

23   Savage, Mattly, Righthouse and Sarot provided false information in the report.

24   (*Complaint, p. 18, ¶ 56*).

25        California Government Code section 821.6 reads: "A public employee is not

26   liable for injury caused by his instituting or prosecuting any judicial or

27   administrative proceeding within the scope of his employment, even if he acts

28   maliciously and without probable cause." The California courts have interpreted

1   section 821.6 to immunize police officers from suit for concealing evidence, *Randle*

2   *v. City of San Francisco*, 186 Cal. App. 3d 449 (1986), and for presenting false

3   information to a district attorney, *Asgari v. City of Los Angeles*, 15 Cal. 4th 744,

4   752 (1997). Section 821.6 immunizes the defendant officers from this suit based on

5   alleged false reports relating to instituting or prosecuting charges against Cota.

6   **G.    Plaintiff's Seventh Cause of Action – Torts in Essence – Fails to**
          **State a Claim.**

7

8   Plaintiff's seventh cause of action asserts Defendants owed Plaintiff

9   nonconsensual duties as set forth in various California Penal Code sections. Such

10  pleadings have been rejected by courts within the Ninth Circuit. *Rezek v. City of*

11  *Tustin*, 2012 WL 5829928 *7*8 (C.D. Cal); *Esteem v. City of Pasadena*, 2007 WL

12  4270360 *23 (C.D. Cal.). The court's rejection of the claim resides in the notion

13  that (1) a tort in essence is superfluous when the law already provides for a tort in

14  substance. (Here, Plaintiff has pled, among other claims, constitutional violations,

15  assault, battery and false arrest); and (2) the cited California Penal Code sections do

16  not create private rights of actions.

17          **1.    *The Claim is superfluous*.**

18  A "tort in se" or "tort in essence" is the "breach of a nonconsensual duty

19  owed another." *Laczko v. Jules Meyers, Inc*., 276 Cal. App. 2d 293, 295 (1969).

20  "Violation of a statutory duty to another may therefore be a tort and violation of a

21  statute embodying a public policy is generally acceptable [as a "tort in se"] even

22  though no specific civil remedy is provided in the statute itself. *Id*. "Any injured

23  member of the public for whose benefit the statute was enacted may bring the

24  action." *Id*.  California courts have applied the "tort in se" doctrine only where a

25  specific civil remedy is unavailable for the violations of statutory duty. *See*, *e.g.,*

26  *South Bay Building Enterprises, Inc. v. Riviera Lend-Lease, Inc*., 72 Cal. App. 4th

27  1111, 1123 (1999)(allowing a tort in se claim for violation of Cal. Civ. Code §

28  2924(h) where no statutory remedy was available); *Tovar v. Southern Cal. Edison*

17

*Co.*, 201 Cal. App. 3d 606, 610 (1988) (allowing a tort in se claim for violations of Cal. Pub. Util. Code § 777 were no statutory remedy was available). Thus, a tort in se claim is "superfluous when the law already provides for a tort in substance." *Esteem v. City of Pasadena*, 2007 WL 4270360 at \*23; see also *Hisamatsu v. Niroula*, 2009 WL 4456392, at \*5-6 (N.D. Cal. Oct. 22, 2009).

The Plaintiff has alleged assault, battery, false arrest and constitutional violation and a claim of tort in essence is redundant to these theories of liability.

### 2.   *There is no private right under the Penal Code cited.*

In his Seventh Cause of Action, Plaintiff lists a number of Penal Code sections which he alleges were violated and form the basis of the Tort in Essence claim.  There is no private right of action incident to the California Penal Code. "A statute creates a private right of action only if the enacting body so intended." *Farmers Ins. Exchange v. Superior Court*, 137 Cal. App. 4th 842, 849 (2006)(citing *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal. 3d 287, 305 (1988)). "That intent need not necessarily be expressed explicitly, but if not it must be strongly implied." *Id.* (citing *Vikco Ins. Services, Inc. v. Ohio Indemnity Co.*, 70 Cal. App. 4th 55, 62 (1999)). Private rights of action under criminal statutes have rarely been implied, and when one has been read into a criminal statute "there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979).

The courts are uniform in holding that the California Penal Code does not create a private right of action. *Willis v. City of Los Angeles*, 57 Fed.Appx. 283, 289 (9th Cir. 2002); *Hillblom v. County of Fresno*, 539 F.Supp.2d 1192, 1212 (2010); *Rezek v. City of Tustin*, 2012 WL 5829928, supra, at \*7\*7 (S.D. Cal.);  *Harvey v. City of South Lake Tahoe*, 2011 WL 3501687 \*7 (E.D. Cal.).

## H.   Negligence (Ninth Cause of Action).

Plaintiff fails to set forth separate facts in his negligence claim. Hence, he must rely on his claim for negligence on the arrest and incarceration of Plaintiff

18

1    without probable cause and in using excessive force in handcuffing Plaintiff.

2    Plaintiff's negligence claim therefore rests on the same set of facts as his Section

3    1983 claims. All of the complained-of conduct by its very nature was intentional.

4    See *Woods v. Gutierrez*, 2012 WL 6203170 *12 (D. Or.)(all of the conduct

5    complained of is by its very nature intentional); Intentional conduct will not support

6    a claim of negligence. *Rux v. Starbucks Corp*., 2007 WL 1470134 *10 (E.D. Cal.);

7    *U.S. ex. rel. Knapp v. Calibre Systems, Inc.,* 2011 WL 3204454 *1 (C.D.

8    Cal.)(where the conduct is intentional it cannot be used as a basis for negligent

9    infliction of emotional distress (NEIDI)). Negligent infliction of emotional distress

10   is not an independent tort, but the tort of negligence. *Wong v. Tai Jing*, 189 Cal.

11   App. 4th 1354, 1377 (2010).

12           "[A] state common-law claim of negligence may be maintained separately

13   from a § 1983 claim only when the negligence claim is based on facts that are

14   different from the facts on which the §1983 claims are based." *Whitfield v. Tri-*

15   *Metropolitan Transp. Dist*., 2009 WL 839484 *11 (D. Or.).

16   **I.      Tenth Cause of Action – Plaintiff is Unable to Establish That the**
         **City Was Deliberately Indifferent as to Training, Supervising,**
17       **Disciplining and Hiring.**

18           Plaintiff alleges in his complaint that at least ten years prior to May 10, 2011,

19   Chief Lansdowne knew Defendant Officers Savage and Mattly had a propensity for

20   bigotry, violence and dishonesty and were unfit for duty.[1] None of the named

21   officers were even on the SDPD ten years prior to May 2011.  Obviously, Chief

22   Lansdowne could not have known about any alleged impermissible conduct for a

23   ten year period. More importantly, Chief Lansdowne, or any other supervisor, was

24   unaware of the conduct alleged Plaintiff's complaint. (*Ex. I – Lansdowne Dec*).  Nor

25   can Plaintiff present any evidence which supports such an allegation. Moreover,

26   SDPD officers and, more specifically, Officers Savage and Mattly have been given

27   _____

28       [1] Officer Savage joined the SDPD in 2004; Officer Mattly joined in 2006; and Chief
     Lansdowne became Chief in 2003.

1  substantial training in a arrest procedures, use of force, and other policies and

2  procedures. (*Ex. J – Declaration of Assistant Chief David Ramirez*).  In fact, the

3  SDPD Officers receive training exceeding California Police Officer Standards and

4  Training (POST) requirements relating to arrests, and use of force, including

5  handcuffing of suspects. (*Ex. J – Ramirez Dec*).

6  The Supreme Court has held that "the inadequacy of police training may

7  serve as the basis for Section 1983 liability only where the failure to train amounts

8  to deliberate indifference to the rights of persons with whom the police come into

9  contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Plaintiff must

10  demonstrate that a particular municipal policy or custom was the "moving force of

11  [the]constitutional violation" and harm suffered. *Monell v. Department of Social

12  Services of City of New York*, 436 U.S. 658, 694 (1978); see *City of Canton*, 489

13  U.S. at 390. Inadequate training that manifests a deliberate indifference on the part

14  of the municipality must be shown to have actually caused the constitutional

15  deprivation. *City of Canton , Ohio v. Harris*, 389 U.S. 378, 391 (1989); *Merritt v.

16  County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). In order to find a

17  constitutional violation, there must be an affirmative link between the policy and

18  the particular constitutional violation. *City of Oklahoma City v. Tuttle*, 471 U.S.

19  808, 823 (1985).  A policy is " 'a deliberate choice to follow a course of action …

20  made from among various alternatives by the official or officials responsible for

21  establishing final policy with respect to the subject matter in question.'" *Fairley v.

22  Luman*, 281 F.3d 913, 918 (9th Cir. 2002). However, "[o]nly where a

23  municipality's failure to train its employees in a relevant respect evidences a

24  'deliberate indifference' to the rights of its inhabitants can such a shortcoming be

25  properly thought of as a city 'policy or custom' that is actionable under § 1983."

26  *City of Canton,* 489 U.S. at 389. A municipality "cannot be held liable solely

27  because it employs a tortfeasor" or "on a respondeat superior theory." *Monell* ,436

28  U.S. at 691.

1    Here, Plaintiff cannot produce evidence of a City policy which amounts to
2    deliberate indifference to the rights of persons that the police come into contact
3    with.

4    **J.    Eleventh Cause of Action.**

5       **1.    *California Civil Code section 52.1.***

6    California Civil Code section 52.1(b) provides a private cause of action
7    against anyone who "interferes by threats, intimidation, or coercion, or attempts to
8    interfere by threats, intimidation, or coercion, with the exercise or enjoyment by an
9    individual or individuals of rights secured by the Constitution or laws of the United
10   States, or laws of rights secured by the Constitution or laws of [California." Section
11   52.1 requires: "[1] an attempted or competed act of interference with a legal right
12   accompanied by [2] a form of coercion." *Jones v. Kmart Corp*., 17 Cal. 4th 329
13   (1998). The elements of a Section 52.1 excessive force claim are essentially
14   identical to those of a Section 1983 excessive force claim. See *Edson v. City of
15   Anaheim*, 63 Cal. App. 4th 1269, 1273 (1998); *City of Simi Valley v. Superior
16   Court*, 111 Cal. App. 4th 1077, 1085 (2003) (where federal constitutional claims
17   are barred, and there is no conduct constituting a state constitutional violation, there
18   is no basis for liability under Section 52.1).

19   A reading of Civil Code section 52.1 demonstrates that this Code section
20   simply tracks Federal Statute, 42 U.S.C. section 1983. Hence, a favorable summary
21   judgment ruling in favor of Defendants in a 1983 action precludes further legal
22   action pursuant to Section 52.1. In *Gomez v. City of Whittier*, 211 Fed.Appx. 573
23   (9th Cir. 2006). Nor do the facts in the instant matter rise to the level of a Section
24   52.1 violation. The legislative history supports the conclusion that the statute was
25   intended to address only egregious interferences with constitutional rights, not just
26   any tort. The act of interference with a constitutional right must itself be deliberate
27   or spiteful. *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012).
28   ///

21

A bill analysis prepared by the Department of Justice commented that as a general proposition, statutory or common-law remedies are all ready available to redress interference with rights protected by state or federal constitutions or laws (e.g., tort). Civil Code section 52.1 focuses specifically on the <u>additional</u> element present especially in hate violence, viz., putting persons in fear of their safety. It is the element of threats, intimidation, or coercion that is being emphasized in Civil Code section 52.1. It is not enough to simply violate the constitutional or statute. *Shoyoye*, 203 Cal. App. 4th at 959. The statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself. *Id*. at 959. "A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and that does not implicate the Act." *Grant*, 765 F.Supp. at 1253. Thus, "a wrongful arrest and detention, without more, cannot constitute 'force, intimidation, or coercion' for purposes of section 52.1." *Id*. at 1253-54; see also *Shoyoye*, 203 Cal. App. 4th at 960.

### 2.   *California Civil Code section 51.7.*

Plaintiff's allegations and evidence are insufficient to support his claim under California Civil Code section 51.7, also known as the Ralph Civil Right Act, which provides a civil action for damages resulting from "violence, or intimidation by threat of violence" based on "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation." Cal. Civ. Code §§ 51.7 & 51. To state a claim under Section 51.7, the evidence must support a reasonable inference that the plaintiff's protected characteristic was a motivating reason for the defendants' conduct. *Austin B. v. Escondido Union Sch. Dist*., 149 Cal. App. 4th 860, 880-81 (2007).

Without more, an allegation that the plaintiff is a member of a protected class is insufficient to raise this inference. *Arres v. City of Fresno*, 2011 WL 284971 *5 (N.D. Cal); *East v. City of Richmond*, 2010 WL 4580112 *5 (N.D. Cal). Because Plaintiff's allegations that he is Hispanic, the officers are white and African

1    American, and his stop and arrest were without justification are, without more,

2    insufficient to show that the officers' conduct was motivated by race.

3    **K.     Fourth Cause of Action – Assault and Battery – Should be Dismissed.**

4           Plaintiff's Fourth Cause of Action fails as a matter of law if this Court finds

5    there was no excessive force from the handcuffing. The only allegations concerning

6    any force were those relating to Plaintiff's handcuffs. (See argument B, infra.)

7           Because the standard of proof on this claim substantially the same as that on

8    Cota's excessive force claims and Plaintiff cites no additional evidence, the Court

9    may rely on its decision with respect to the excessive force claim. *Samon v.*

10   *Robbins*, 173 F.3d 1150, 1157 (9th Cir. 1999); *Esteem v. City of Pasadena*, 2007

11   WL 4270360 *16 (C.D. Cal.).

12   **L.     Plaintiff's Eighth Cause of Action – Intentional Infliction of**
         **Emotional Distress – is Not Supported by the Evidence.**
13

14          If this Court finds the Defendants are entitled to qualified immunity for the

15   arrest and allegations of excessive force, the claim of intentional infliction of

16   emotional distress cannot stand alone.

17          The elements of a prima facie case of intentional infliction of emotional

18   distress in California are (1) extreme and outrageous conduct by the defendant with

19   the intention of causing, or reckless disregard of the probability of causing,

20   emotional distress; (2) the plaintiffs suffering severe or emotional distress; and (3)

21   actual and proximate causation of the emotional distress by the defendant's

22   outrageous conduct.  *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982).

23          As to the first element, "in order to be considered outrageous, the conduct

24   must be so extreme as to exceed all bounds of that usually tolerated in a civilized

25   community." *Id.* "The conduct must be outrageous, i.e., beyond all bounds of

26   decency; ordinary rude or insulting behavior is not enough to justify an award of

27   damages." Witkin, Summary of California Law, vol.5, *Torts* § 451 (10th ed. 2005).

28   The tort calls for intentional or at least reckless conduct intended to inflict injury or

23

1    engaged in with the realization that injury will result. *Id*. at 210.

2          As to the second element, Plaintiff bears the burden of showing that

3    Defendants' conduct resulted in severe emotional distress. *Fletcher v. Western*

4    *Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376 (1970). Nonetheless, "[c]omplete

5    emotional tranquility is seldom obtainable in this world, and some degree of

6    transient and trivial emotional distress is a part of the price of living among people.

7    The law intervenes only where the distress conflict is so severe that no reasonable

8    man could be expected to endure it." *Id*. (quoting Restatement (Second) of Torts §

9    46 com.j. (1965)). "Severe" means "substantial or enduring as distinguished from

10   trivial or transitory. *Id*. at 397; *see also* Witkin, Summary of California Law, vol.5,

11   *Torts* § 451 (10th ed. 2005).

12         The arrest for a violation of Penal Code section 647(f) and a few hour stay at

13   a detox center (not jail) is not the kind of conduct contemplated by the tort of

14   intentional infliction of emotional distress. It hardly exceeds all pounds of that

15   usually tolerated in a civilized community. Moreover, Plaintiff has not presented

16   evidence that he suffered severe emotional distress to sustain his claim. Finally,

17   there is no evidence to establish Defendants intentionally caused any alleged

18   emotional distress.

19   **M.     Dismissal of Defendants Sarot, Christman, Righthouse, Long and**
        **Lansdowne is Appropriate as There Was No Personal Involvement**.
20

21         None of the above cited Defendants were present when Plaintiff was taken

22   into custody on June 4, 2011. Plaintiff offers no allegations in either his complaint

23   or deposition that any of these name Defendants were involved in the alleged

24   assault, battery, negligence, false arrest, or any of the events culminating in

25   Plaintiff's arrest. Therefore, any and all common law causes of action cannot apply

26   to these Defendants.

27         In addition to the lack of constitutional status, Defendants Sarot, Christman,

28   Righthouse, Long and Lansdowne lacked personal involvement in the alleged

                                        24

wrongdoing. As they were not even present prior to or at the time of Plaintiff's arrest.  "Section 1983 creates a cause of action based on personal liability and predicated upon default; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)("Liability under section 1983 arises only upon a showing of personal participation by the defendant.") "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendants whose acts or omissions are alleged to have caused the constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Plaintiff claims he informed Defendants Sarot and Christman that he had been wrongfully arrested, and had requested an internal affairs investigator speak with him immediately.

Such claims do not rise to the level of a constitutional violation. The fact that the defendants refuse to accept Plaintiff's self-serving statement of innocence fails to reach constitutional status. "Section 1983 imposes two central proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988). The mere fact that further investigations were not conducted hardly reaches the level of a constitutional violation.

Dated:  January 17, 2014        JAN I. GOLDSMITH, City Attorney

By  */s/ Donald F. Shanahan*
     Donald F. Shanahan
     Chief Deputy City Attorney

Attorneys for Defendants