# EXHIBIT H

*Attendings: 19* *July*

**OFFICE USE ONLY**
Date Assigned _07/05/2011_
Date Completed _09/22/2011_
Date Presented _09/27/2011_
A \_\_ D \_\_ AB \_\_
Changes

*tout 540 stop*

CITIZENS' REVIEW BOARD
Team 2
**CASE #2011-078**

| | |
|---|---|
| **Date of Incident:** | June 4, 2011 |
| **Time of Incident:** | 0254 Hours |
| **Location of Incident:** | 600 5th Avenue, San Dieg |
| **Date of Complaint:** | June 4, 2011 |

*Central Division*

---

## CONFIDENTIAL: FOR EXCLUSIVE USE OF CITIZENS REVIEW BOARD

**COMPLAINANT:** COTA, Javier Fabian
H/M, DOB: ███

Police Sergeant, Mesa, Arizona

**SUBJECT OFFICERS:** MATTLY, Justin E., PO-II, ID #6143
Date of Hire: 07-22-2005 (5 years)
S.D.P.D., Central Division - Third Watch
W/M, DOB: ███

SAVAGE, Ariel L., PO-II, ID #6059
Date of Hire: 10-22-2004 (6 years)
S.D.P.D., Central Division - Third Watch
B/M, DOB: ███

**CIVILIAN WITNESS:** COTA, Jaime
H/M, DOB: ███

Nephew of complainant

**WITNESS OFFICERS:** SAROT, Christopher M., Sergeant, ID #4689
Date of Hire: 02-02-1990 (21 years)
S.D.P.D., Central Division - Third Watch
W/M, DOB: ███

1

CHRISTMAN, Daniel H., Lieutenant, ID #3316
Date of Hire: 04-15-1982 (29 years)
S.D.P.D., Patrol Operations/Watch Commander
W/M, DOB:

(Suggestions for clear group presentations: 1) Convert officers' dates of hire and dates of birth into years to help listeners more easily evaluate their experience. 2) Remove names of "Others Contacted" if they do not contribute to clearing or corroborating an allegation to help listeners focus on the most important information. 3) Provide a brief description of the witness's role beside their name.)

| Allegation | Description Of Allegation | Subject Officer | Witness To Allegation | I.A. Finding | Team Finding |
|---|---|---|---|---|---|
| 1) ARREST | Javier COTA was arrested by Officer MATTLY for public intoxication. | MATTLY | Officer Ariel SAVAGE Jaime COTA | E | A |
| 2) ROCEDURE | Javier COTA alleges his handcuffs were not double locked. | MATTLY | Officer Ariel SAVAGE Jaime COTA | U | A |
| 3) COURTESY | Javier COTA alleges "the black officer" (Officer SAVAGE) yelled "Unless you want to join him you better shut the fuck up!" to Jaime COTA. | SAVAGE | Officer Justin MATTLY Jaime COTA | U | A |
| 4) PROCEDURE | Javier COTA alleges Officer SAVAGE accelerated and braked abruptly while driving to the Sobering Center. | SAVAGE | Officer Justin MATTLY | U | A |
| 5) COURTESY | Javier COTA alleges the officers turned their radio up and laughed while transporting him to the Sobering Center to make fun of him. | MATTLY SAVAGE | Officer Justin MATTLY Officer Ariel SAVAGE | U | A |

2

**Case Comments :**
NONE

**Summary:**
While on patrol in the area of 600 5th Avenue in downtown San Diego at about 0257 hours on June 4, 2011, Officer Justin MATTLY and Officer Ariel SAVAGE noticed a pedicab with four passengers. Two passengers were male and two were female. The two women passengers got out of the pedicab. One of the women had a key in her hand and was walking towards a parked car. Officers MATTLY and SAVAGE heard the women speaking with slurred speech. Officer SAVAGE asked her if she was going to be driving and she stated that she was. Officer SAVAGE attempted to evaluate her for signs of intoxication. The OFFICERS did not obtain any identification of the two women. Javier COTA was sitting in the pedicab with his nephew, Jaime COTA. Javier COTA, a police sergeant from Mesa, Arizona, did not recognize Officers MATTLY and SAVAGE as being police officers, and yelled to them as they were talking to the women. Officer MATTLY told Javier COTA, who was still sitting in the pedicab, to move on. Javier COTA continued to yell to the officers loudly and used some profane words. Officer MATTLY noticed that Javier COTA appeared to be intoxicated, and asked Javier COTA to leave the area or face arrest for public intoxication. Javier COTA refused to leave the area.
Officer MATTLY asked Javier COTA to get out of the pedicab. Javier COTA told Officer MATTLY that he needed to find his vehicle. Officer MATTLY arrested Javier COTA for public intoxication and placed him in handcuffs for transport to the Sobering Center (detox). Jaime COTA, the nephew of Javier COTA, was not arrested and stayed in the pedicab. The two women left the area.
Officers MATTLY and SAVAGE took Javier COTA to the Sobering Center. Javier COTA demanded to speak to the officer's supervisor. Officers MATTLY and SAVAGE transported COTA to the SDPD headquarters where COTA spoke with Sergeant Christopher SAROT. Javier COTA requested to speak with someone in Internal Affairs and then spoke with Lieutenant Daniel CHRISTMAN.
Officers MATTLY and SAVAGE then transported Javier COTA to the Sobering Center.

| Team 2 Findings (circle one) | A   A/C   D/C | A   A/C   D/C | A   A/C   D/C |
|---|---|---|---|
| Team 2 Signatures | Signature<br>Date 10/25/11<br>James Herrera | Signature<br>Date 25 October 2011<br>Benetta Buell-Wilson | Signature<br>Date<br>Stuart Simmons |

### CRB Team Notes:
### Allegation 1 Arrest

Javier COTA was arrested by Officer MATTLY for public intoxication.

On June 4, 2011, at 0257 hours in downtown San Diego, Officers MATTLY and SAVAGE were patrolling the 600 block of 5th Avenue. They drove up behind a pedicab with four passengers; two were female and two were male.
The females got out of the pedicab. One had a car key in her hand.
Officer Ariel SAVAGE said during an interview with IA:
"...my partner (Officer MATTLY) and I noticed the females walking towards a red vehicle parked on the west curb line. One of the females had keys in her hand. As the female with the keys in her hand approached the red vehicle she was talking to, I believe it was her girlfriend and or the gentleman in the pedicab. Instantly I noticed her slurring her words. I stopped the vehicle. I asked the female, you're not going to drive are you? She looked at me and she told me she was. She was going to. She was going to go home. That's when I got out of the vehicle. I didn't think for the looks of it she didn't look like she was capable of driving home safely. That's when I began to conduct a sobriety test on the female."

During his interview with IA, Javier COTA said that he had five or six alcoholic beverages that evening prior to the incident and that he and his nephew (Jaime COTA) had employed a pedicab and had picked up two "really beautiful Hispanic girls about my nephew's age." He described the ensuing event in which officers spoke with the female:

"... at one point the girl says there's my car... I heard one of the girls say words to the effect that she was not interested; to leave her alone and I had seen what I believed to be two security guards come up to them and start hitting on them and talking to them...I turned around and the next thing I know they were putting the, um, flashlight in her face telling her now they were going to do a sobriety test on her because they think that she's going to be driving and she stated like three or four times that they were just getting stuff from the vehicle and they were getting back on the peddle cart."

4

Officer SAVAGE spoke to the female while Officer MATTLY acted as the cover officer. Javier COTA interjected comments which interrupted the contact.

Javier COTA stated in the interview with IA that he said to the officers:

"Why are you guys treating these girls like dipshits and I know that was my precise language.... He told me to stand up, get off of the cart, step down here...I stood up and I walked forward to get off of that cart and the minute that I did she (he) immediately turned me around and said I was under arrest at which point my nephew (Jaime COTA) kind of yelled out."

During the interview with IA, Officer MATTLY described Javier COTA's behavior:

"He (Javier COTA) was interfering, yelling towards us as Officer SAVAGE was attempting to evaluate the female....I had told Mr. COTA multiple times to leave in the pedicab and just continue on... He was definitely loud enough that he (Javier COTA) was talking over Officer SAVAGE who was contacting the female because the female was having trouble hearing what Officer SAVAGE was saying....His (Javier COTA's) demeanor, inability to follow instruction, the odor of alcoholic beverage I observed, the slurred speech which I heard and thought the course of our contact he passed out in the patrol vehicle about three times."

During the interview with IA, Officer SAVAGE was asked by Sergeant RIGHTHOUSE:

"Did it appear he (Javier COTA) was unable to care for his safety?

Officer SAVAGE replied: "Yes sir."

California Penal Code section 647(f) states:
Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:(f) Who is found in any public place under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, controlled substance, or toluene, in a condition that he or she is unable to exercise care for his or her own safety or the safety of others, or by reason of his or her being under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, or toluene, interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way.

SDPD Internal Affairs deems MATTLY's arrest of Javier COTA is legal and justified, and **EXONERATED** and Team 2 agrees.

**Allegation 2- Procedure**

Javier COTA alleges his handcuffs were not double locked.

Department Police 6.01, III (Handcuffing, Restraining, Searching and Transporting Procedures states):
Officers are responsible for the safety and well being of all subjects who are taken into custody. It is an officer's duty to keep prisoners safe from harm and prevent their escape, while also protecting others and preserving evidence.

Department Police 6.01, V, A and B, (Handcuffing, Restraining, Searching and Transporting Procedures) states:
A. All persons taken into custody shall be handcuffed. Persons who are detained during a police investigation may be handcuffed when that procedure reasonably appears necessary to ensure that safety of the officer and others. All persons shall be handcuffed with their hands behind them and with the backs of the hands together, unless this technique would hamper an investigation or the prisoner has a physical condition or injury that precludes this technique. If exceptions are made, officers should use caution and good judgment.
B. Officers shall apply handcuffs tightly enough to control the subject and shall double lock the handcuffs as soon as practical. Over-tightening the handcuffs shall be avoided. Inserting a fingertip between the handcuffs and the prisoner's wrist will ensure sufficient space and reduce the risk of injury.

During an interview with Internal Affairs, Javier COTA stated:

"He (Officer MATTLY) did not double lock his handcuffs. He stuck me I the car with them not double locked and then him (sic),they transported me from there.... My handcuff things starting cinching down on me because they were not double locked... at that time that my cuffs were not double locked and they were tightening too much so they got me out of the car at the detox thing. They adjusted them. They double locked them to make sure that they weren't synching (sic) down on me anymore and they put me back I the car..."

Officer MATTLY wrote in his arrest report:
"I told (Javier) COTA he was way too intoxicated to drive and I was placing him under arrest for public intoxication. I placed COTA in handcuffs, checked for tightness and double-locked them. COTA was placed in the back of our patrol vehicle and transported directly to detox."

Officer MATTLY stated in the follow-up interview:
"I placed each of his (COTA's) hands behind his back. I put the handcuffs over his hands; put fingers between the handcuffs; closed them; double locked them; checked them for tightness."

6

Officer SAVAGE stated in the follow-up interview:
"It was pretty standard. Officer MATTLY had Mr. COTA put his hands behind his back. Officer MATTLY placed his handcuffs while COTA's hands were behind his back; double locked the handcuffs and insured there was enough space in between the handcuffs and COTA's wrists.....I was standing probably about a couple feet away from Officer MATTLY and COTA while he was being, while COTA was being put in handcuffs."

Officer MATTLY was asked in his interview if he had checked COTA's handcuffs when they were at the Sobering Center. Officer MATTLY said:
"Yes I did. He (COTA) thought his handcuffs were too tight. I took him out of the back of the car to check and verify that they were not and they were not."

SDPD Internal Affairs has determined that this allegation is **UNFOUNDED** and Team 2 agrees.

### Allegation 3- Courtesy

Javier COTA alleges "the black officer" (Officer SAVAGE) yelled, "Unless you want to join him you better shut the fuck up!" to Jaime COTA.

Department Police 9.20 states:

Members shall be courteous to the public. Members shall be tactful in the performance of their duties, shall control their tempers, exercise the utmost patience and discretion, and shall not engage in argumentative discussion even in the face of extreme provocation. Except when necessary to establish control during a violent or dangerous situation, no member shall use coarse, profane or violent language. Members shall not use insolent language or gestures in the performance of his or her duties. Members shall not make derogatory comments about or express any prejudice concerning race, religion, politics, national origin, gender, sexual orientation, or similar personal characteristics.

During his interview, Javier COTA stated:
"And the black officer (Officer SAVAGE) said unless you want to join him you better shut the fuck up and my nephew (Jaime COTA) kind of put his hands up like I'm not going to say anything..."
Javier COTA also stated: "
"I didn't even converse with the other one (Officer MATTLY). The only one I talked to was the black officer (Officer SAVAGE)."

During his interview, Jaime COTA stated:
"And the Caucasian officer (Officer MATTLY) which is a taller officer said shut the fuck up or you are going with him."

7.

Officer MATTLY denied making the statement or using the word "fuck" during the incident; he also stated that he never heard Officer SAVAGE make the statement or use the word "fuck" during the incident. Similarly, Officer SAVAGE denied making the statement or using the word "fuck" during the incident; he also stated that he never heard Officer MATTLY make the statement or use the word "fuck" during the incident.

SDPD Internal Affairs has determined that this allegation is **UNFOUNDED** and Team 2 agrees.

**Allegation 4- Procedure**

Javier COTA alleges Officer SAVAGE accelerated and braked abruptly while driving to the Sobering Center.

Department Procedure 1.12, III, (Operation of Police Department Vehicles) states: "All personnel should exercise due care and caution when operating Police Department vehicles."

During his interview, Javier COTA stated:
"....they were driving like crazy and I mean speeding up, going fast, slamming their brakes..."

During his follow-up interview, Officer MATTLY described Officer SAVAGE's driving: "Nothing out of the ordinary; just average driving to the Sobering Center. Nothing I noticed at all being different than any time we drive anywhere.... I did not notice anything that would make me think there was something different about his (Officer SAVAGE's) driving. It was just average twenty five miles an hour down to detox."

During his follow-up interview, Officer SAVAGE described his driving in the statements: ".... We went north up to Broadway and made the eastbound turn onto Broadway towards the Sobering enter. We were probably (sic) going about twenty five maybe thirty miles an hour and that was basically it... I mean it was pretty standard. We stopped at maybe a couple red lights if any and that was about it. "

SDPD Internal affairs conclude that this allegation is **UNFOUNDED** and Team 2 agrees.

**Allegation 5- Courtesy**

Javier COTA alleges the officer turned their radio up and laughed while transporting him to the Sobering Center to make fun of him.

Department Police 9.20 states:

8

Members shall be courteous to the public. Members shall be tactful in the performance of their duties, shall control their tempers, exercise the utmost patience and discretion, and shall not engage in argumentative discussion even in the face of extreme provocation. Except when necessary to establish control during a violent or dangerous situation, no member shall use coarse, profane or violent language. Members shall not use insolent language or gestures in the performance of his or her duties. Members shall not make derogatory comments about or express any prejudice concerning race, religion, politics, national origin, gender, sexual orientation, or similar personal characteristics.

During his interview, Javier COTA said:
"... they were turning the radio real loud and they were laughing. I kind of took it they were making fun of me..."

Officer MATTLY denied turning the car radio up so that Javier COTA could not speak to him nor did Officer SAVAGE; he also denied laughing at Javier COTA. Similarly, Officer SAVAGE denied turning the car radio up so that Javier COTA could not speak to him nor did Officer MATTLY; he also denied laughing at Javier COTA.

SDPD Internal Affairs has deemed this allegation to be **UNFOUNDED** and Team 2 agrees.

9