1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

JAVIER COTA,

Case No. 12-cv-998 BAS (WMC)

11

Plaintiff,

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

12

13

v.

14

CITY OF SAN DIEGO, et al.,

**[ECF Nos. 54-1, 65 ]**

15

Defendants.

16

17       Before the Court is Defendants' Motion for Summary Judgment. ECF 54-1.

18   For the reasons set forth below, the Court **DENIES IN PART** and **GRANTS IN**

19   **PART** Defendants' Motion for Summary Judgment.

20   **I.       FACTUAL BACKGROUND[1]**

21       On June 4, 2011, Plaintiff Javier Cota ("Cota") and his nephew, Jamie Cota

22   ("Jamie"), went to a bar in San Diego's Gaslamp District, where Cota drank about

23   five alcoholic drinks. Pl.'s Opp'n Defs.' Mot. Summ. J. 1:9–11, ECF 65. After the

24   bar closed at 2:00 a.m., Cota and Jamie met two unidentified women and joined

25   them in a pedicab. *Id*. at 1:21–25. The women directed the pedicab back to their

26

27   ───────────────

28   [1] These facts are either uncontested or construed in the light most favorable to Plaintiff.

1  car. *Id*. Cota and his nephew waited in the pedicab for the women to go to their car,

2  believing that after they went to the car the women would return. *Id*. at 26–28, 2:1.

3  Cota then saw two men in dark clothing talking to the women and overheard one of

4  the women say, "I'm not interested. Leave me alone." *Id*. at 2:10–13. Cota

5  believed the men were "hitting on" the women. *Id*. at 2:20. From ten to fifteen feet

6  away, Cota called out to the men, "why are you acting like dipshits to the women."

7  *Id*. at 2:27.

8       From that distance away, Cota believed the men were Target security

9  guards. *Id*. at 2:28; Defs.' Mot. Summ. J. 2:15–18, ECF 54–1 (citing Pl.'s Dep.). In

10  fact, the men were San Diego Police Officers, Defendants Justin Mattly and Ariel

11  Savage (collectively referred to as "Officers"). Pl.'s Opp'n 2:28; Defs.' Mot. 2:15–

12  16 (citing Pl.'s dep.). Cota claims that the Officers' police car was thirty feet away

13  with its blue and red lights off and that he did not hear the Officers ask the women

14  if they intended to drive. Pl.'s Opp'n 4:5–6, 2:8.

15       After Cota called to the Officers, Officer Mattly told Cota to get out of the

16  pedicab, arresting him for public intoxication pursuant to California Penal Code §

17  647(f). *Id*. at 3:9; Defs.' Mot. 3:6–7. The Officers arrested Cota because he yelled

18  at them, appeared intoxicated, and they believed he might become violent or

19  interfere with their investigation of the women. Pl.'s Opp'n 9:1–13. Cota admits he

20  felt intoxicated and drunk at the time of the arrest. Defs.' Mot. 4:10 (citing to Pl.'s

21  Dep.). However, Officer Savage did not ask Cota how much he drank that night

22  until after he was arrested and did not ask him if he intended to drive. Pl.'s Opp'n

23  3:12–17. Officer Mattly admitted he arrested Cota before he smelled alcohol or

24  knew of the possibility that Cota would drive a car. *Id*. at 9:8–10.

25       After the Officers arrested Cota, they placed him in the police car without

26  double-locking his handcuffs, a measure that could have prevented them from

27  tightening around his wrists. *Id*. at 4:7–16. On the way to the Volunteers for

28  America Detox Center ("Detox"), the Officers drove erratically, turned the radio

1   up, and could not hear Cota when he complained that the handcuffs were painful.

2   *Id.* at 4:12–13. Cota attempted to reduce the pain by lying down in the police car,

3   which gave the appearance that he had "passed out." *Id.* at 4:11–12.

4         After arriving at Detox, Cota informed the Officers that the handcuffs were

5   painful. Consequently, the Officers loosened and double-locked Cota's handcuffs.

6   *Id.* at 4:15–16.The Officers told Cota that they would not charge him with public

7   intoxication if he checked into Detox. Cota refused, stating he wanted to speak to

8   the Officers' supervisor. *Id.* at 4:16–18. The Officers took Cota back to police

9   headquarters so Cota could speak to Defendant Sergeant Christopher Sarot to

10   complain about the circumstances of his arrest. *Id.* at 4:19–21. Because Sergeant

11   Sarot did not tell Cota the reason for his arrest, Cota requested to speak with the

12   Lieutenant. *Id.* at 4:25–27. While speaking with Defendant Lieutenant Daniel

13   Christman, Cota requested that Christman conduct an internal investigation

14   regarding his arrest. *Id.* at 5:6–9. Lieutenant Christman denied the request and

15   directed Cota to fill out a Citizens Complaint Form ("CCF"). *Id.*; Defs.' Mot. 5:27–

16   28. Both Sergeant Sarot and Lieutenant Christman reported that Cota portrayed

17   signs of intoxication, which included: bloodshot eyes, lack of eye-contact, inability

18   to give lucid answers, and the smell of alcohol. Defs.' Mot. 4:19–25, 5:17–25.

19         After Cota filled out the CCF, the Officers took him back to Detox where he

20   checked himself in. Pl.'s Opp'n 5:10, 6:22–26. According to an employee at

21   Detox, Cota did not stumble, was able to pay the service fee, and was cooperative

22   when he checked in. *Id.* at 6:21–28, 7:3.

23         To follow up on the June 4th incident, Cota spoke with Defendant Chief

24   William Lansdowne's assistant, Defendant Officer Boyd Long, and traveled to San

25   Diego to speak with Chief Lansdowne regarding his CCF. *Id.* at 7:16–18. Both

26   Chief Lansdowne and Officer Long would not discuss the investigation with Cota

27   because Cota had filed a lawsuit against the San Diego Police Department. *Id.* at

28   8:2–20.

1   Pursuant to the CCF, Defendant Sergeant Righthouse conducted an internal

2   affairs investigation. Defs.' Mot. 6:2–3. He interviewed Cota, Jamie Cota, Officer

3   Mattly, Officer Savage, and approximately fifty pedicab drivers. *Id*. at 7:15–16.

4   Sergeant Righthouse also obtained closed-circuit footage from a pub that captured

5   Cota and the Officers on the street. *Id*. at 7:13–14. The Citizens Review Board

6   reviewed Sergeant Righthouse's findings and agreed the arrest was lawful and

7   justified. *Id*. at 7:20–23.

8   Defendants now move for summary judgment on all causes of action alleged

9   by Plaintiff. Plaintiff has agreed to dismiss the civil conspiracy and negligent

10  employment claims. Pl.'s Opp'n 22:1–5, 26:2–3.

## II.    LEGAL STANDARD

12  Summary judgment is appropriate on "all or any part" of a claim if there is

13  an absence of a genuine issue of material fact and the moving party is entitled to

14  judgment as a matter of law. Fed.R.Civ.P. 56; *see also Celotex Corp. v. Catrett*,

15  477 U.S. 317, 322 (1986) ("*Celotex*"). A fact is material when, under the

16  governing substantive law, the fact could affect the outcome of the case. *See*

17  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Freeman v.*

18  *Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is

19  genuine if "the evidence is such that a reasonable jury could return a verdict for the

20  nonmoving party." *Anderson,* 477 U.S. at 248. One of the principal purposes of

21  Rule 56 is to dispose of factually unsupported claims or defenses. *See Celotex*, 477

22  U.S. at 323–24.

23  The moving party bears the initial burden of establishing the absence of a

24  genuine issue of material fact. *See Celotex*, 477 U.S. at 323. "The burden then

25  shifts to the nonmoving party to establish, beyond the pleadings, that there is a

26  genuine issue for trial." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th

27  Cir. 2006) (citing *Celotex*, 477 U.S. at 324).

28  "When the party moving for summary judgment would bear the burden of

proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoted by *Miller*, 454 F.3d at 987).

"In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case." *Miller*, 454 F.3d at 987 (citing *Celotex*, 477 U.S. at 325). "Thus, '[s]ummary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to[his] case, and on which [he] will bear the burden of proof at trial.' " *Miller*, 454 F.3d at 987 (quoting *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (internal quotations omitted)).

A genuine issue at trial cannot be based on disputes over "irrelevant or unnecessary facts[.]" *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Similarly, "[t]he mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (citing *Anderson,* 477 U.S. at 252).[2] The party opposing summary judgment must "by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56(e)). That party cannot "rest upon the mere allegations or denials of [his or her] pleadings."

---

[2] *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (if the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts").

1  Fed.R.Civ.P. 56(e).

2  The Court is not obligated "to scour the records in search of a genuine issue

3  of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing

4  *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). "[T]he district

5  court may limit its review to the documents submitted for the purposes of summary

6  judgment and those parts of the record specifically referenced therein." *Carmen v.*

7  *San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

8  When making its determination, the Court must view all inferences drawn

9  from the underlying facts in the light most favorable to the nonmoving party. *See*

10  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

11  "Credibility determinations, the weighing of evidence, and the drawing of

12  legitimate inferences from the facts are jury functions, not those of a judge, [when]

13  he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at

14  255.

## III.   DISCUSSION

### 1.   The Court Grants Summary Judgment for Plaintiff's *Monell* Claim (Claim 2)

18  Plaintiff claims Chief Lansdowne violated his civil rights by failing to

19  investigate his Citizens Complaint, the basis of Plaintiff's *Monell* claim. Plaintiff

20  only offers self-serving assertions to support his claims that the San Diego Police

21  Department ("Department") did not carry out an investigation and that Chief

22  Lansdowne did not personally investigate the complaint.

23  *Monell* provides for municipal liability if a government employee violates a

24  person's constitutional rights under 42 U.S.C § 1983 pursuant to a department

25  policy or regulation. *See Monell v. Department of Social Services*, 436 U.S. 685,

26  691 (1978). Government supervisors can violate a person's civil rights if the

27  supervisors fail to train, supervise, or control their subordinates.  *See Larez v. City of*

28  *Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (quoting *Clay v. Conlee*, 815 F.2d

1   1164, 1170 (8th Cir.1987). Plaintiff claims Chief Lansdowne violated his rights by

2   failing to comply with California Penal Code § 832.5(a)(1), which requires law

3   enforcement agencies to have a policy or procedure to investigate a citizen's

4   complaint of the agency's personnel. *See* Cal. Penal Code § 832.5(a)(1).

5          Here, Plaintiff offers no evidence showing Chief Lansdowne did not comply

6   with § 832.5(a)(1) or disputing Defendants' evidence that Officer Righthouse

7   conducted an investigation pursuant to Plaintiff's Citizen Complaint. Plaintiff argues

8   that Chief Lansdowne did not conduct an investigation, which therefore violates the

9   penal code.  However, § 832.5(a)(1) requires the Department have a procedure in

10  place. Plaintiff fails to argue that the Department does not have a procedure to

11  conduct investigations pursuant to citizens' complaints; rather, he only argues that

12  Chief Lansdowne failed to investigate his complaint.

13         In this instance, the Department did follow a procedure when it investigated

14  Plaintiff's complaint. Defendants offer undisputed evidence that Officer Righthouse

15  conducted an investigation to Chief Lansdowne's satisfaction. Further, the Citizen

16  Review Board Team reviewed and agreed with Officer Righthouse's findings.

17  Because Chief Lansdowne followed a department policy, the Court finds Chief

18  Lansdowne did not violate § 832.5(a)(1) or Plaintiff's rights.

19         Accordingly, Defendants' motion is **GRANTED IN PART**.  The Court

20  **DISMISSES** Plaintiff's *Monell* claim against the City of San Diego and Chief

21  Lansdowne **WITH PREJUDICE**.

22         **2. The Court Grants Summary Judgment for Violation of Civil**

23              **Rights under 42 U.S.C. § 1985(3) (Claim 3)**

24         Plaintiff claims Officers Mattly and Savage conspired to violate his First,

25  Fourth, Fifth, Sixth, and Fourteenth Amendment rights when the Officers arrested

26  him. Additionally, Plaintiff asserts that Defendants Righthouse, Sarot, Christman,

27  Long, and Lansdowne had knowledge of the conspiracy. However, Plaintiff fails to

28  explain how his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights have

1  been infringed under 42 U.S.C § 1985(3) in his Opposition.

2       A § 1985(3) claim provides for a private citizen to sue public actors in their

3  personal capacity for money damages if the public actors conspired to prevent the

4  citizen from exercising a right or privilege. *See* 42 U.S.C. § 1985. To establish a §

5  1985(3) claim, a plaintiff must show:

6       (1) that the purpose of the conspiracy was to deprive the plaintiff of
     equal protection, equal privileges and immunities…; (2) that the

7       defendants intended to discriminate against the plaintiff; (3) that the

8       defendants acted under color of state law and authority; (4) that the
     acts done in furtherance of the conspiracy resulted in an injury to the

9       plaintiff's person or property or prevented him from exercising a right

10       or privilege of a United States citizen.

11  *Sykes v. State of Cal.*, 497 F.2d 197, 200 (9th Cir. 1974). The plaintiff must allege

12  and prove that racial or class animus motivated the defendants. *See Sever v. Alaska*

13  *Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citing *United Brotherhood of*

14  *Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828–29 (1983)).

15       Here, Plaintiff fails to allege any facts demonstrating that race or class-based

16  animus motivated Defendants' actions. In fact, he fails to mention racial or class

17  animus in his brief. Since Plaintiff did not provide evidence to support an essential

18  element of the claim, Defendants' motion is **GRANTED IN PART**. The Court

19  **DISMISSES** the § 1985(3) claim against all Defendants **WITH PREJUDICE**.

20       **3. The Court Grants Summary Judgment on Plaintiff's Civil**

21       **Conspiracy and Negligent Employment Claims (Claims 6 and 10)**

22       Plaintiff agrees to dismiss the civil conspiracy and negligent employment

23  claims. Accordingly, Defendants' motion is **GRANTED IN PART**. The Court

24  **DISMISSES** Plaintiff's claims for civil conspiracy and negligent employment

25  against all Defendants **WITH PREJUDICE**.

26       **4. The Court Grants Summary Judgment for Plaintiff's Tort in**

27       **Essence Claim (Claim 7)**

28       Plaintiff cites to several California Penal Code violations to support a Tort in

1   Essence claim against Defendants. However, there is no evidence to support any of
2   the alleged penal code violations. Again, Plaintiff offers only self-serving
3   statements to support this claim.

4      The Tort in Essence Doctrine provides an injured person with the right to
5   sue for "breach of nonconsensual duty" pursuant to a statute even though that
6   statute does not afford a civil remedy. *See Rezek v. City of Tustin*, No. SACV 11–
7   01601 2012 WL 5829928, at \*7–8 (C.D. Cal. Nov. 15, 2012). A criminal statute
8   can create a nonconsensual duty owed to another; however, "private rights of
9   action under criminal statutes have rarely been implied." *Id.*   For a statute to create
10  a private right to sue, the legislature must have intended it to do so. *See e.g.*,
11  *Farmers Ins. Exchange v. Superior Court*, 137 Cal App. 4th 842, 849 (2006);
12  *Willis v. City of Los Angeles*, 57 Fed Appx. 283, 289 (9th Cir. 2002).

13     Here, Plaintiff fails to cite authority showing that the legislature intended the
14  fifteen criminal statutes he invokes to provide a private right to sue. Additionally,
15  there are no facts to support the finding that any of Defendants violated the Penal
16  Code sections. Accordingly, Defendants' motion is **GRANTED IN PART**. The
17  Court **DISMISSES** the Tort in Essence claim against all Defendants **WITH**
18  **PREJUDICE**.

19     **5.   The Court Grants Summary Judgment for Intentional Infliction**
20          **of Emotional Distress (Claim 8)**

21     Plaintiff claims Defendants caused him to suffer severe emotional distress.
22  Specifically, in Plaintiff's Opposition, he argues Officers Mattly and Savage's
23  behavior was sufficiently outrageous and extreme to give rise to an intentional
24  infliction of emotional distress ("IIED") claim. However, Plaintiff's facts do not
25  support his claim.

26     A *prima facie* claim for IIED requires the following three elements: "(1)
27  extreme and outrageous conduct by the defendant with the intention of causing, or
28  reckless disregard of the probability of causing, emotional distress; (2) the

1  plaintiff's suffering severe or extreme emotional distress; and (3) actual and
2  proximate causation of the emotional distress by the defendant's outrageous
3  conduct." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982) (quoting
4  *Cervantez v. J. C. Penny Co.*, 24 Cal. 3d 579, 593 (1979)).

5     Plaintiff's claim does not satisfy the first or second elements. For the first
6  element, Plaintiff fails to allege any specific acts by the Officers he claims are
7  outrageous or that the Officers intentionally or recklessly caused him emotional
8  distress. For the second element, Plaintiff does not point to any evidence that he
9  actually suffered severe emotional distress. Mere allegations in the complaint are
10 not enough to create a genuine issue of material fact, evidence for emotional
11 distress needs to be provided. *Moreland v. Las Vegas Metro. Police Dep't*, 159
12 F.3d 365, 374 (9th Cir. 1998), as amended (Nov. 24, 1998)(finding that Plaintiff's
13 reliance on the complaint's allegations rather than presenting evidence to support
14 the elements of an IIED claim was "insufficient to carry the plaintiff's burden on
15 summary judgment."). In the complaint, Plaintiff alleges physical pain, fear,
16 anxiety, and mental anguish. In contrast, Plaintiff provides no evidence supporting
17 these claims in his Opposition. Because there is no evidence to support the
18 Complaint's allegations that he suffered severe or extreme emotional distress,
19 Defendants' motion is **GRANTED IN PART**. The Court **DISMISSES** the eighth
20 cause of action against all Defendants **WITH PREJUDICE**.

21     **6. The Court Grants Summary Judgment for Plaintiff's Negligence**
22         **Claim (Claim 9)**

23     Plaintiff alleges that Defendants negligently caused him to suffer emotional
24 and mental distress. A negligent infliction of emotional distress claim requires proof
25 of duty, breach, causation, and damages. *Marlene F. v. Affiliated Psychiatric Med.*
26 *Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989). Plaintiff does not provide any facts to show
27 the elements of this tort.  In Plaintiff's Opposition, Plaintiff argues that only Chief
28 Lansdowne acted negligently for failing to conduct a proper investigation. This

1    argument does not support the Complaint's allegation of emotional or mental

2    distress. Additionally, there is undisputed evidence the Department investigated

3    Plaintiff's Citizen Complaint. Therefore Plaintiff cannot support his claim that

4    Defendants negligently caused him to suffer emotional or mental distress.

5          Accordingly, Defendants' motion is **GRANTED IN PART**. The Court

6    **DISMISSES** the ninth cause of action against all Defendants **WITH PREJUDICE**.

7        **7.   The Court Grants Summary Judgment on Plaintiff's Violation of**

8            **Civil Rights under California Civil Code Sections 52.1 and 51.7**

9            **Claims (Claim 11)**

10          Plaintiff also fails to sufficiently establish material elements for a violation

11    of civil rights under California Civil Code ("CCC") §§ 52.1 and 51.7 claim.

12          First, CCC § 52.1 affords a person with a private right of action against

13    another who interferes with that person's constitutional rights, requiring the same

14    material elements as a 42 U.S.C. § 1983 claim. Cal. Civ. Code § 52.1; *Jones v.*

15    *Kmart Corp*., 17 Cal. 4th 329, 334 (1998). However, a CCC § 52.1 claim

16    additionally requires the plaintiff to show the defendant interfered using improper

17    means, such as threats, intimidation, or coercion. *Shoyoye v. Cnty. of Los Angeles*,

18    203 Cal. App. 4th 947, 955 (2012), reh'g denied (Mar. 13, 2012), review denied

19    (May 9, 2012).   Coercion inherent in wrongful detention is not a sufficient

20    "improper means." *Id*. Here, Plaintiff failed to respond to Defendants' argument

21    that Defendants never used coercion, intimidation, or threats against Plaintiff.

22    Therefore Plaintiff fails to meet his burden to establish a genuine issue for trial that

23    Defendants used improper means to interfere with his rights.

24          Second, CCC § 51.7 provides a person with a private right of action for

25    damages "for violence, or intimidation by threat of violence." Cal. Civ. Code §

26    51.7. This cause of action requires the plaintiff to allege that a "protected

27    characteristic" of the plaintiff motivated the defendant's actions. Here, Plaintiff

28    provides no evidence to establish that he has a protected characteristic or that a

1   protected characteristic motivated Defendants. Therefore Plaintiff did not satisfy

2   his burden to establish these essential elements of this claim.

3        Accordingly, Defendants' motion is **GRANTED IN PART**. The Court

4   **DISMISSES** Plaintiff's claims under CCC §§ 52.1 and 51.7 against all Defendants

5   **WITH PREJUDICE**.

6        **8. The Court Denies Summary Judgment for Violation of Civil**

7        **Rights 42 U.S.C. § 1983 and False Arrest (Claims 1 and 5)**

8        For the violation of his civil rights pursuant to 42 U.S.C § 1983 and false

9   arrest claims, there is a genuine dispute of the material facts. Plaintiff asserts the

10  false arrest claim against the Officers and the City of San Diego ("City) and asserts

11  the § 1983 claim against all Defendants except the City. If the facts are taken in the

12  light most favorable to Plaintiff, they may support a false arrest claim and liability

13  under § 1983 for an arrest without probable cause, using excessive force, and

14  retaliatory arrest.

15       Both the false arrest claim and arrest without probable cause rest heavily on

16  the factual determination of whether or not the Officers had probable cause to

17  arrest Plaintiff. To find probable cause for a warrantless arrest, a prudent person

18  must believe, given all of the facts and circumstance, the defendant committed a

19  crime. *See e.g.*, *U.S. v. Potter*, 895 F.2d 1231, 1234 (9th Cir. 1990); *Barry v.*

20  *Fowler*, 902 F.2d 770,773 (9th Cir. 1990). Plaintiff's and Defendants' stories of the

21  arrest differ enough to create a genuine issue of material fact as to whether the

22  Officers had probable cause to authorize the arrest. The Court cannot make a

23  credibility determination to reconcile the conflicting narratives at the summary

24  judgment stage. *See Anderson*, 477 U.S. at 255.

25       For excessive force, this Circuit holds that when an arrestee complains of

26  tight handcuffs and is physically harmed by the tight handcuffs, the officers used

27  excessive force. *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir.1993). Here, in

28  light of the facts most favorable to Plaintiff, a reasonable jury could find the

1   Officers used excessive force when they did not double-lock the handcuffs and

2   Plaintiff tried to notify the Officers that the handcuffs were tight.

3       Similarly, Plaintiff's retaliatory arrest claim survives because there is a

4   genuine issue of material fact as to whether the Officers arrested Plaintiff in

5   retaliation for lawful activity. The facts present here, if taken in the light most

6   favorable to Plaintiff, could hypothetically support a claim for retaliatory arrest.

7       All of the surviving claims require Plaintiff to show that the Officers acted

8   unreasonably, therefore violating his constitutional rights. Because an officer is not

9   protected by qualified immunity when violating a person's constitutional rights,

10  this Court will not decide the issue of qualified immunity at the summary judgment

11  stage. *See Hope v. Pelzer*, 536 U.S. 730, 736 (2002). However, this determination

12  relies on the facts taken in the light most favorable to Plaintiff, and reasonable

13  finders of fact could find the Officers entitled to qualified immunity at trial.

14      Plaintiff's § 1983 claim under the First and Fourth Amendment involve the

15  Officers' conduct in the field. Even taking the evidence in the light most favorable

16  to Plaintiff, there are no facts to support similar liability against the other

17  Defendants. Accordingly, the § 1983 claim survives exclusively against the

18  Officers.

19      Because the false arrest claim against the Officers survives, the City may

20  also be liable under the doctrine of *respondeat superior* if the Officers were acting

21  within the scope and course of their employment when they arrested Plaintiff. *See*

22  *Phillips v. City of Fairfield*, 406 F. Supp. 2d 1101, 1119 (E.D. Cal. 2005).

23      Accordingly, Defendants' motion is **DENIED IN PART** on claim five

24  against the Officers and the City and claim one against the Officers, and

25  **GRANTED IN PART** as to claim one against all Defendants other than the

26  Officers. The Court **DISMISSES** Plaintiff's claim one against all Defendants other

27  than the Officers **WITH PREJUDICE.**

28

1
2

### 9.  The Court Denies Summary Judgment on Plaintiff's Assault and Battery Claim (Claim 4)

3
4
5
6

Plaintiff alleges the Officers and the City committed assault and battery when the Officers improperly handcuffed him. There is a genuine issue of material fact as to whether the handcuffs were double-locked and whether Plaintiff notified the Officers about the tight handcuffs.

7
8
9
10
11
12
13
14
15
16

A plaintiff establishes a *prima facie* case for battery if an officer used unreasonable force to make an arrest. *Saman v. Robbins*, 173 F.3d 1150, 1157 n. 6 (9th Cir. 1999). Assault and battery relies on the same standards as a § 1983 claim based on excessive force. *Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010) aff'd, 685 F.3d 867 (9th Cir. 2012). As with the excessive force claim, the facts most favorable to Plaintiff could support a finding of unreasonable force. Additionally, the City may be held liable under the doctrine of *respondeat superior* if the Officers were acting within the scope and course of their employment when they allegedly committed assault and battery. *See Phillips v. City of Fairfield*, 406 F. Supp. 2d 1101, 1119 (E.D. Cal. 2005).

17

Accordingly, Defendants' motion is **DENIED IN PART**.

18

## IV.   CONCLUSION & ORDER

19
20
21
22
23
24
25

For the foregoing reasons, the Court **DENIES IN PART** and **GRANTS IN PART** Defendants' Motion for Summary Judgment. The Court **DISMISSES** Plaintiff's claims two, three, six, seven, eight, nine, ten, and eleven against all Defendants **WITH PREJUDICE**. Plaintiff's claim one survives against Defendants Mattly and Savage, and claims four and five survive against Officers Mattly and Savage and the City. All claims are **DISMISSED** against all other Defendants **WITH PREJUDICE**.

26

**IT IS SO ORDERED.**

27

Dated:  October 29, 2014

Hon. Cynthia Bashant
United States District Judge

28