# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHANNON ROBINSON AND DANTE HARRELL, | ) ) ) | Civil No.11cv0876 AJB (WVG) |
| Plaintiffs, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' |
| v. | ) ) | MOTION FOR SUMMARY JUDGMENT AND DENYING |
| CITY OF SAN DIEGO, et al., | ) ) | DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) ) | [Doc. Nos. 39 and 52] |

Presently before the Court are two motions for summary judgment. Plaintiffs' motion for summary judgment on their causes of action for: 1) unlawful detention; 2) arrest without probable cause; 3) battery on Plaintiff Robinson; 4) negligence; and 5) violation of Cal. Civ. Code § 52.1, and Defendants' motion for summary judgment based on qualified immunity, (Doc. No. 52). A hearing on these motions was held on the record on May 16, 2013. Eugene Iredale and Julia Yoo appeared on behalf of Plaintiffs and Jennifer Gilman appeared on behalf of Defendants. Based upon the parties moving papers, oral arguments and for the reasons set forth below, the Plaintiffs' motion for summary judgment, (Doc. No. 39), is GRANTED IN PART and DENIED IN PART and the Defendants' motion for summary judgment, (Doc. No. 52), is DENIED.

### *Procedural Background*

On June 5, 2012, Plaintiffs filed a Second Amended Complaint with sixteen causes of action. (Doc. No. 25.) The causes of action in the SAC are: (1) Unlawful Detention; (2) Retaliation; (3) Excessive Force; (4) Arrest without Probable Cause; (5) False Imprisonment; (6) Malicious Prosecution; (7) Assault; (8) Battery; (9) Intentional Infliction of Emotional Distress; (10) Negligence; (11) Failure to Properly Screen and Hire; (12) Failure to Properly Train; (13) Failure to Supervise and Discipline; (14) Monell Liability for a Pattern of Brutality; (15) Violation of California Civil Code § 52.1; and (16) Permanent Injunctive Relief. *Id.* The first six cause of action are pursuant to 42 U.S.C. § 1983.

On December 26, 2012, Plaintiffs filed a Motion for Partial Summary Judgment as to the First (Unlawful Detention), Third (Excessive Force), Fourth (Arrest without Probable Cause), Eighth (Battery of Plaintiff Shannon Robinson), Tenth (Negligence), and Fifteenth (California Civil Code § 52.1) causes of action. (Doc. No. 39.) On January 31, 2013, Defendants filed a Motion for Summary Judgment based on qualified immunity. (Doc. No. 52.)

The Court notes that the Defendants have requested dismissal of Plaintiffs' sixth, eleventh, twelfth, thirteenth and fourteenth causes of action and Defendants William Lansdowne and Matthew Dobbs from all causes of action. Plaintiffs do not object to the dismissal of these defendants or causes of action. *See* Doc. No. 66, p. 2:4-8. Based upon the foregoing, Plaintiffs' sixth, eleventh, twelfth, thirteenth and fourteenth causes of action and Defendant William Lansdowne and Matthew Dobbs are hereby DISMISSED.

### *Legal Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if there is suffi-cient evidence for a reasonable jury to return a verdict for the non-moving party. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the nonmoving party would bear the burden of proof at trial, the moving party may satisfy its burden on summary judgment by simply pointing out to the Court an absence of evidence from the nonmoving party. *Miller*, 454 F.3d at 987. "The moving party need not disprove the other party's case." *Id.*

Once the movant has made that showing, the burden shifts to the opposing party to produce "evidence that is significantly probative or more than 'merely colorable' that a genuine issue of material fact exists for trial." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *FTC v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001)); *see also Miller*, 454 F.3d at 988 ("[T]he nonmoving party must come forward with more than 'the mere existence of a scintilla of evidence.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court must review the record as a whole and draw all reasonable inferences in favor of the nonmoving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 736, 738 (9th Cir. 2000). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.; Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). "Thus, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Miller*, 454 F.3d at 988 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### ***Discussion***

Presently before the Court are two motions for summary judgment. Plaintiffs' motion for summary judgment against Officers Savage and McClain on their causes of action for: 1) unlawful detention; 2) arrest without probable cause; 3) battery on Plaintiff

Robinson; 4) negligence; and 5) violation of Cal. Civ. Code § 52.1, and Defendants'
motion for summary judgment based on qualified immunity, (Doc. No. 52).

## I. Plaintiffs' Motion for Summary Judgment

In a Section 1983 action, it is the plaintiff who bears the burden of (1) establishing
that the defendant's actions violated a federal constitutional right; and (2) that the right
was clearly established at the time of the conduct at issue. *Falvo v. Owasso Ind. Sch.
Dist.*, 223 F.3d 1203, 1218-19 (10th Cir. 2000), reinstated in pertinent part *Falvo v.
Owasso Ind. Sch. Dist.*, 288 F.3d 1236; *LSO, Ltd.v. Stroh*, 205 F.3d 1146, 1157 (9th Cir.
2000). Once the Plaintiffs have made that showing, the burden shifts to the Defendants to
produce evidence that is significantly probative that a genuine issue of material fact exists
for trial. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *FTC
v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001)).

The Plaintiffs' motion seeks summary judgment against Officers Savage and
McClain on the Plaintiff's causes of action for: 1) unlawful detention; 2) arrest without
probable cause; 3) battery on Shannon Robinson; 4) negligence; and 5) violation of Cal.
Civ. Code § 52.1.

### A. Relevant Facts

In ruling on the Plaintiffs' motion for summary judgment, the Court must review
the record as a whole and draw all reasonable inferences in favor of Defendants.[1]
As such, the facts set forth below were taken from the police reports of the incident and
the deposition testimony of the Defendant Officers Savage and McClain.

On March 30, 2010, Plaintiffs Shannon Robinson, Dante Harrell, and their friend
Ben Thomas drove in Robinson's 2005 maroon Pontiac Sunfire to Canada Steak Burger
at 36th and University in San Diego to eat lunch. Doc. No. 25, SAC, at ¶¶16-18. Defen-
dants, San Diego police officers Ariel Savage and Daniel McClain passed Plaintiffs' car
driving in the opposite direction. *Id.* at ¶19. Officer Savage ask Officer McClain to run
the plate with Dispatch. Doc. No. 39-5, Exh. D, Police Report of Officer McClain, p. 7,

---

[1] *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 736, 738 (9th Cir. 2000).

Statement of Officer Savage. Officer McClain states that they decided to run the plate because they encountered the vehicle in "an area where cars are frequently stolen - there have been an average of 32 auto thefts and 22 stolen vehicle recoveries per month in the "830s" service area over the past year." *See* Doc. No. 39-5, Exh. D-4, Officer McClain's police report.

The plate number on Robinson's car was either misread or incorrectly entered by one of the Officers and it came back as a plate belonging to a Honda. *Id.*, at ¶¶21, 24-5. Defendants initiated the traffic stop of the Plaintiffs' vehicle based solely upon the misread license plate and the suspicion that vehicle was stolen. *See* Doc. No. 39-5, Exh. D, Police Report of Officer McClain, p. 7, Statement of Officer Savage. Defendants pulled up behind the Plaintiffs' car in a parking lot, blocking them in.

Prior to contacting the Plaintiffs in the vehicle, the license plate was re-checked and Officer Savage and Officer McClain realized that a mistake had been made and that the plate on the car matched the make and model of the Plaintiffs' car.[2] Officer Savage states that they approached the vehicle and made contact with the occupants because the driver had pulled over as soon as they saw the lights and Officer Savage felt "the need to explain the reason for the stop." *See* Doc. No. 58, Pla. Reply, at 2:17-20 (citing Officer Savages interview with Internal Affairs investigator, Brett Righthouse.) Officer Savage states that after he informed the Plaintiffs of the mistake, he continued his investigation requesting driver's license, registration and proof of insurance to verify "compliance with operating a vehicle on the road." *Id.* at 2:23-5.

---

[2] *See* Doc. No. 39-5, Exh. D, at D-4, Police Report of Officer McClain (Officer McClain stating "Dispatch informed me the license plate I ran over the air was registered to a Pontiac. I informed Officer Savage of this as he approached the driver."; *Id.* at D-7, Statement of Officer Savage (Officer Savage stating " As I approached the driver's door, you [Officer McClain] told me the plate was wrong and that it did come back to a Pontiac. I contacted the driver, Dante Harrell, and explained to him the reason for the stop."); *see also* Doc. No. 39-4, Exh. C-1, Police Report of Officer Savage, (Officer Savage stating "Officer McClain said that he ran the license plate wrong and re-ran the plate of (CA 5HNG338) which did come back to a 2005 4-door Pontiac. By this time the Pontiac has already stopped and we were already approaching the vehicle."); Doc. No. 39-6, Exh. E, Deposition of Officer Savage, at E-4: lines 7 - E-5: line 1.

Both Officer Savage and Officer McClain state in their depositions that re-checking the plate did not conclude the investigation because they would need to check and verify the VIN number to conclude the investigation.[3]

Officer Savage asked the driver, Plaintiff Dante Harrell, for his license, registration and proof of insurance. Harrell did not produce proof of insurance. Officer Savage returned to his vehicle to verify the registration with the VIN number on his computer system and to write a citation for operating a vehicle without proof of insurance. *See* Doc. No. 39-6, Exh. E, Deposition of Officer Savage, at E-22: line 16 - E-23: lines 8.

---

[3] *See* Doc. No. 39-6, Exh. E, Deposition of Officer Savage, at E-6: lines 11-21:

Q. So the license plate when McClain made the first mistake, came back to a Honda; and then he ran it again, and he learned that he had made a mistake, and the license plate was registered to a Pontiac, correct?
A. Correct, but I would still have to verify that.
Q. Well, so did you go to verify that?
A. At some point, I did.
Q. And when you verified it, you found out that, in fact, it was registered to a Pontiac, correct?
A. That wasn't until later into the contact.

*Id.* at E-22: line 16 - E-23: line 8:
Q. All right. In any event, at some point, you decided to walk back from the position you had at the front driver's window back to your patrol car; is that true?
A. Yes, sir.
Q. All right. And what was the reason why you walked back to your patrol car?
A. I needed to verify the registration with the VIN number and -- on my computer system, and to issue a citation.
Q. Now, how did you get the VIN number?
A. I get it multiple ways.
Q. How did you get it that day?
A. Well, that day, I got it from the paper registration that was provided to me. The second way I got it was from the VIN plate on the vehicle itself located in the -- it was in the front portion of the driver's side dash, and also on my computer.

*See* Doc. No. 39-7, Deposition of Officer McClain, Exh. F at F-10: lines 3-11:

A. When I initially ran the plate, I ran it on the computer, and I saw that it was registered to a Honda. That was one piece of evidence that tended to indicate it may be stolen. When I ran it a second time, it came back to a Pontiac, which was a piece of information that tended to indicate it might not be stolen. But we had not concluded the investigation
Q. Well--
A. -- by that point.

Officer Savage states that he asked Officer McClain to obtain Robinson's information so
that he could write a ticket to the owner of the vehicle. *See* Doc. No. 39-4, Exh. C-1.
Officer McClain approached the passenger window and asked Robinson, the owner of the
vehicle, for her identification. *See* Doc. No. 39-5, Exh. D-5. At that point, Harrell
informed Officer McClain that he was recording him using his cell phone and Robinson
was talking on the phone and ignored Officer McClain's repeated requests for identifica-
tion. *Id.*

Officer McClain states that he asked Ms. Robinson several times for her identifica-
tion, but that she repeatedly ignored him and was refusing to provide identification or
answer any questions as to her identity. *Id.* Officer McClain states that he then asked Ms.
Robinson to get out of the car. *Id.* Officer McClain states that Ms. Robinson continued to
ignore his requests, so he repeated his request loud enough so that it was not possible that
she did not hear him. *See* Doc. No. 39-5, Exh. D-5. Officer McClain states that he then
reached into the open window and placed his hand on Robinson's shoulder to get her
attention, but Ms. Robinson continued to ignore him. *Id.* Officer McClain states that he
then told Robinson that she was under arrest and to get out of the car. *Id.* When Robin-
son continued to ignore him, Officer McClain pulled on the handle on the outside of the
door, but it was locked. *Id.* Officer McClain reached in the window for the door lock, but
Harrell knocked Officer McClain's hand away before he could unlock the door. *Id.*

Officer McClain states that Harrell continued to obstruct his attempts to unlock the
door. *See* Doc. No. 39-5, Exh. D, Officer McClain's police report, at D-5. At that point,
Officer McClain states that he alerted Officer Savage and Officer Savage returned to the
driver's side window. *Id.* Officer McClain removed Harrell's hand from the passenger
door lock and unlocked the door. *Id.* Harrel then threwed his arm around Robinson, holding
her against him. *Id.* Officer McClain states that he yelled at Robinson to get out of the
car and for Harrell to let her go, but neither complied. *Id.* Officer Savage began strug-
gling with Harrell and Officer McClain states that he sprayed OC spray at Harrell and
Robinson, spraying Harrell in the face and Robinson on the back, before retreating to the

Case 3:11-cv-00876-BAS-WVG   Document 102-1   Filed 04/06/15   Page 9 of 26

back of the vehicle and calling for urgent cover. *See* Doc. No. 39-5, Exh. D, Officer McClain's police report, at D-6.

When additional officers arrived,[4] Officer McClain and Officer Hernandez pulled Robinson from the car and ordered her to get on the ground. *Id.* When Robinson did not comply, Officer McClain used an arm bar takedown to take Robinson to the ground where she was cuffed and then put in the police car. *Id.*

Officer Sacco arrived on the driver's side of the vehicle and assisted Officer Savage in attempting to remove Mr. Harrell from the car, but Harrell kicked Officer Sacco in the right leg and Officer Savage in the left index finger. Officer Sacco then used his Taser to drive stun Harrell in the middle of the back, Harrell continued to kick. Officer Savage used his Taser and struck Harrell in the rear lower waist and buttocks area which stunned him and he was taken into custody without further incident.

### B. Plaintiffs' Unlawful Detention Claim

Plaintiffs' first cause of action against Defendant Officers Savage and McClain is for unlawful detention pursuant to 42 U.S.C. § 1983. Plaintiffs' motion is premised on the argument that the continued detention of Plaintiffs was unlawful from the moment that Defendants knew of their mistake involving the license plate. Plaintiffs' contend that because there was no reasonable suspicion that Plaintiffs had committed a crime, Defendants' demand, pursuant to that detention, for information from Plaintiffs was unconstitutional.

The Plaintiffs bear the burden of (1) establishing that the defendants' actions violated a federal constitutional right; and (2) that the right was clearly established at the time of the conduct at issue.[5] The Plaintiffs argue that the detention of a driver, however brief, during the course of a routine traffic stop constitutes a seizure within the meaning

---

[4] There was a police helicopter on the scene videoing the incident and at least 10 police cars can be seen responding to the scene as a result of Officer McClain's call for urgent cover.

[5] *Falvo v. Owasso Ind. Sch. Dist.*, 223 F.3d 1203, 1218-19 (10th Cir. 2000), reinstated in pertinent part *Falvo v. Owasso Ind. Sch. Dist.*, 288 F.3d 1236; *LSO, Ltd.v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000).

of the Fourth Amendment. *See United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005). The standards by which we measure the legality of such stop and resulting detention under the Fourth Amendment are well established. *See Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968).

The Fourth Amendment requires that a detention be supported by facts and inferences that demonstrate a reasonable suspicion that the person detained may be involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968). The Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-1105 (9th Cir. 2000). To satisfy the Fourth Amendment's reasonableness requirement, an officer must have "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Lopez–Soto*, 205 F.3d 1101, 1104–05 (9th Cir.2000) (quoting United States v. Michael R., 90 F.3d 340, 346 (9th Cir.1996)). The officer may use his training to draw inferences from the facts he observes, but those inferences must be grounded in objective facts. *Lopez–Soto*, 205 F.3d at 1105. To determine whether reasonable suspicion exists, the court looks to the "totality of the circumstances" in each case "to see whether the detaining officer has a particularized and objective basis for suspecting legal wronging." *See United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (citation omitted).

Where the historical facts giving rise to the stop and detention are undisputed, the only question is one of law, namely, whether the stop and detention, considered in light of the totality of the circumstances, were reasonable. *See United States v. Dennison*, 410 F.3d 1203, 1207 (10th Cir. 2005). A traffic stop is reasonable at its inception if the detaining officer, at the very least, reasonably suspects the driver has violated the law. Once the purpose of the stop is satisfied and any underlying reasonable suspicion dispelled, the driver's detention generally must end without undue delay unless the officer has an objectively reasonable suspicion that illegal activity unrelated to the stop has

occurred or the driver otherwise consents to the encounter. *See United States v. Millan-Diaz*, 975 F.2d 720, 721-22 (10th Cir. 1992). An investigative stop is not subject to strict time limitations as long as the officer is pursuing the investigation in a diligent and reasonable manner. *United States v. Sharpe*, 470 U.S. 675, 686-687, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985). The continued detention is reasonable only so long as the officer's subsequent conduct is reasonably related in scope to the circumstances which justified the initial stop. *See United States v. Williams*, 403 F.3d 1203, 1206 (10th Cir. 2005).

As a preliminary matter, the Court notes that the Defendant Officers admit that prior to making contact with the occupants of the vehicle, they knew that a mistake had been made, that the license plate on the car matched the make and model of the Plaintiffs' vehicle and there was no violation. *See* Doc. No. 58, Pla. Reply, p. 2:12-3:9. Officer Savage confirms this and states that he made contact with the occupants of the vehicle, because he felt "the need to explain to them the reason for the stop." *Id.* at 2:18-19. Officer Savage states that after he explained the mistake to Plaintiffs, he went on to request license, registration and proof of insurance from Harrell, the driver, to verify that he was in compliance with operating a vehicle on the road. *Id.* at 2:23-25.

Defendants initial stop of Plaintiffs' vehicle constituted a permissible investigative detention of limited scope consistent with the Fourth Amendment, because its was not until after the Officers initiated the stop that they discovered they had made a mistake. However, upon realizing the mistake regarding the license plate, the Court finds Officer Savage's further detention and investigation of the Plaintiffs and request for identification was unconstitutional because the reasonable suspicion for the stop had dissipated when the Plaintiffs' license plate was re-checked and found to match the make and model of Plaintiffs' vehicle.

This case is not unlike *United States v. Edgerton*, where a police officer initiated a traffic stop of the defendants's vehicle for "tag violation" because he could not read the temporary registration tag while in transit. 438 F.3d 1043 (10th Cir. 2006). *United*

*States v. Edgerton*, 438 F.3d at 1045. The vehicle promptly pulled over and as the officer approached the vehicle he was able to see the temporary tag and determine that it was in fact valid. The Officer then made contact with the driver of the vehicle and informed him of the reason for the stop and asked the driver for his license and registration papers, which the driver provided and the officer returned to his patrol vehicle. *Id.* The officer returned the defendant's license and registration papers and issued the defendant a warning ticket for failing to properly position the license plate. *Id.* at 1046. In ruling on the lawfulness of the stop and detention, the district court found that the probable cause for the traffic stop did not dissipate when the officer approached the car because the violation for which the stop was made was that the license plate was not clearly visible and legible while the car was in transit. *Id.* The Tenth Circuit overruled this decision finding that the facts as found by the district court,[6] demonstrated that the tag was illegible not due to any material within Defendant's ability to control, but due to external conditions. The same is true in the instant case, Officers Savage and McClain's mistake and mis-entry of the Plaintiffs plate and the resulting ill-founded suspicion that the car was stolen, was not the result of any actions taken or not taken by the Plaintiffs.

Although the Ninth Circuit previously held that during a traffic stop, an officer may only ask questions reasonably related to the justification for the traffic stop, the Supreme Court has since ruled that "'mere police questioning does not constitute a seizure' unless it prolongs the detention of the individual, and thus, no reasonable suspicion is required to justify questioning that does not prolong the stop." *Id.* at 1080 (citing *Muehler v. Mena*, 544 U.S. 93, 101, 125 S. Ct. 1465, 161 L. Ed. 2d 299 (2005)). In the instant case, Officer Savage's request for license, registration and proof of insurance prolonged the detention. Officer Savage has admitted that he did not have probable cause to continue the detention to make such verifications. *See* Doc. No. 58,

---

[6] Trooper Dean testified, the district court found, and the Government acknowledges the only reason the registration tag's "manner of display" was purportedly unlawful in this case was because "it was dark out" and he could not see or read it. *Compare Redinger*, 906 P.2d at 82.

11cv0876

Pla. Reply, p. 3:7-9.  As such, the Court finds that the Officers lacked reasonable suspicion to continue the detention and request Harrell's license, registration and proof of insurance or Robinson's identification.

While Defendants attempt to argue that the re-checking of the license plate did not conclude their investigation[7] and that additional confirmation was required,[8] the Court finds these arguments wholly unpersuasive.  Defendant Officers both admit that they knew ***before*** making contact with the Plaintiffs that basis for their initial suspicion that the vehicle might be stolen was unfounded and that no violation had occurred. The Defendants' mistake created the reasonable suspicion and when the Defendants realized their mistake, further investigation was both unnecessary and unwarranted. *See People v. Redinger*, 906 P.2d 81, 84 (Colo. 1995) (holding that an officer who properly initiates an

---

[7] *See* Doc. No. 39-7, Exh. F, Deposition of Officer McClain at F-10: lines 3-11:

A. When I initially ran the plate, I ran it on the computer, and I saw that it was registered to a
Honda. That was one piece of evidence that tended to indicate it may be stolen. When I ran it a second time, it came back to a Pontiac, which was a piece of information that tended to indicate it might not be stolen. But we had not concluded the investigation
Q. Well--
A. -- by that point.

[8] *See* Doc. No. 39-6, Exh. E, Deposition of Officer Savage at E-6: lines 11 - 21:

Q. So the license plate when McClain made the first mistake, came back to a Honda; and then he ran it again, and he learned that he had made a mistake, and the license plate was registered to a Pontiac, correct?
A. Correct, but I would still have to verify that.
Q. Well, so did you go to verify that?
A. At some point, I did.
Q. And when you verified it, you found out that, in fact, it was registered to a Pontiac, correct?
A. That wasn't until later into the contact.

*Id.* at E-7: lines 15 - 25:

Q. Not only was it registered to a Pontiac, it was registered to that Pontiac, correct?
A. I don't know that at the time. I would have to verify if it was the right Pontiac by checking the VIN number.
Q. Did you ask the people to check the VIN number?
A. They don't need to check the VIN number. That's something I do as part of my job.
Q. Did you check the VIN number?
A. At some point, I did.

11cv0876

investigatory stop based on reasonable suspicion that the driver has violated a motor vehicle law may not, consistent with the Fourth Amendment, detain and interrogate the driver after the officer learns the initial suspicion is ill-founded.)

The Tenth Circuit reached the same conclusion in *United States v. McSwain*, where a Utah state trooper stopped defendant's vehicle because he could not read the temporary registration tag posted in the rear window. 29 F.3d 558, 561-62 (10th Cir. 1994). As the trooper approached the vehicle on foot, he observed an unobscured Colorado temporary tag which appeared valid. At that point, the Tenth Circuit found that Trooper Dean, as a matter of courtesy, should have explained to Defendant the reason for the initial stop and then allowed her to continue on her way without requiring her to produce her license and registration. *See McSwain*, 29 F.3d at 562. Where an officer who properly initiates an investigatory stop based on reasonable suspicion that the driver has violated a motor vehicle law may not, consistent with the Fourth Amendment, detain and interrogate the driver after the officer learns the initial suspicion is "ill-founded." *People v. Redinger*, 906 P.2d 81, 84 (Colo. 1995). The Tenth Circuit found that the trooper unduly prolonged the detention because he had no objectively reasonable suspicion that illegal activity had occurred or was occurring, the trooper's actions in questioning McSwain and requesting his license and registration exceeded the limits of a lawful investigative detention and violated the Fourth Amendment. *Id.* at 561

The parties spend considerable time discussing the requirements of California Vehicle Code 16028(a)[9] and Officer Savage's mistaken belief that he was required to

---

[9] *See* Doc. No. 39-12, Exh. M, California Vehicle Code §16028 Providing evidence of financial responsibility on request of peace officer
(a) Upon the demand of a peace officer pursuant to subdivision (b) or upon the demand of a peace officer or traffic collision investigator pursuant to subdivision (c), every person who drives a motor vehicle upon a highway shall provide evidence of financial responsibility for the vehicle that is in effect at the time the demand is made. However, a peace officer shall not stop a vehicle for the sole purpose of determining whether the vehicle is being driven in violation of this subdivision.
(b) Whenever a notice to appear is issued for any alleged violation of this code, except a violation specified in Chapter 9 (commencing with Section 22500) of Division 11 or any local ordinance adopted pursuant thereto, the cited driver shall furnish written evidence of financial responsibility upon request of the peace officer issuing the citation.

11cv0876

1    issue the ticket for failure to provide proof of insurance to the owner of the vehicle as

2    opposed to the driver of the vehicle. However, Officer Savage's mistaken belief that the

3    ticket should be issued to Robinson who was a passenger instead of Harrell who was the

4    driver or Officer Savage's mistaken belief that he could issue a ticket solely for failure to

5    provide proof of insurance without an underlying traffic violation is immaterial. Having

6    no objectively reasonable suspicion that illegal activity had occurred or was occurring,

7    Officer Savage's actions in questioning the Plaintiffs and requesting license, registration

8    and proof of insurance lacked reasonable suspicion and exceeded the limits of a lawful

9    investigative detention in violation the Plaintiffs' Fourth Amendment rights. *United*

10   *States v. McSwain*, 29 F.3d 558, 561 (10th Cir.1994). Plaintiffs inability to provide proof

11   of insurance as well as the citation Officer Savage intended to issue for violation of

12   California Vehicle Code 16028(a) were tainted by the Defendants unlawful detention and

13   would not support an arrest/ticket of Harrell or Robinson in any event under the

14   exclusionary rule for a violation of the Fourth Amendment. *Michigan v. Tucker*, 417 U.S.

15   433 (1974). Therefore, any arrest/ticket of Harrell or Robinson under for California

16   Vehicle Code 16028(a) would violate the Fourth Amendment.

17       Based upon the foregoing, the Court finds that the Plaintiffs have demonstrated

18   that there is no genuine dispute of material fact that the Defendants' actions violated their

19   Fourth Amendment right to be free from unreasonable seizure by prolonging the deten-

20   tion to inquire into plaintiff's identification, registration and insurance information, and

21   that these rights were clearly established at the time of the conduct at issue.[10]

22

23   The peace officer shall request and write the driver's evidence of financial responsibility

24   on the notice to appear, except when the peace officer is unable to write the driver's
     evidence of financial responsibility on the notice to appear due to an emergency that

25   requires his or her presence elsewhere. If the cited driver fails to provide evidence of
     financial responsibility at the time the notice to appear is issued, the peace officer may

26   issue the driver a notice to appear for violation of subdivision (a). The notice to appear
     for violation of subdivision (a) shall be written on the same citation form as the original

27   violation.

28       [10] *Falvo v. Owasso Ind. Sch. Dist.*, 223 F.3d 1203, 1218-19 (10th Cir. 2000),
     reinstated in pertinent part *Falvo v. Owasso Ind. Sch. Dist.*, 288 F.3d 1236; *LSO, Ltd.v. Stroh*, 205 F. 3d 1146, 1157 (9th Cir. 2000).

Defendants have advanced several arguments that qualified immunity should still apply where an officer mistakenly believes probable cause existed or reasonably believed that the conduct did not violate a clearly established constitutional right. The Court finds these arguments unpersuasive, and lacking in evidentiary support, as the constitutional right to be free from unreasonable seizures is clearly established and the mistaken belief that probable cause existed is clearly absent in the present case. However, whether Officer Savage's belief that he needed to verify that the VIN matched was objectively reasonable creates a question of facts that precludes a determination of qualified immunity. Because the Court finds that the determination of the objective reasonableness of Officer Savage's conduct turns on disputed facts, Defendants' motion for summary judgment on the basis of qualified immunity on this cause of action is DENIED. *See Wilkins v. City of Oakland*, 350 F.3d 949, 955-956 (9th Cir.2003), cert. denied, --- U.S. ----, 125 S.Ct. 43, 160 L.Ed.2d 14 (2004). As such, the Court finds that However, Defendants may raise the defense of qualified immunity and evidence thereon at trial. Plaintiffs' motion for summary judgment against Defendants Savage and McClain on Plaintiffs' first cause of action for unlawful detention is hereby GRANTED IN PART and DENIED IN PART with causation and the amount of damages to be determined at trial. The Court finds and summarily adjudicates that Defendants Savage and McClain's continued detention of Plaintiffs violated Plaintiffs' Fourth Amendment rights by prolonging the detention to inquire into plaintiff's identification, registration and insurance information.

### C. Plaintiffs' Claims for Unlawful Arrest

Plaintiffs' seek summary judgment on the fourth cause of action in the SAC, which alleges that Plaintiffs Robinson and Harrell were arrested without probable cause. A warrantless arrest must be supported by probable cause. *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990). Probable cause exists when, 'under the totality of the circumstances known to the arresting officers, a prudent person would have concluded

that there was a fair probability that [the plaintiff] has committed a crime.'" *United States v. Smith*, 790 F.2d 789, 791 (9th Cir. 1986).

According to the police reports filed by Officers Savage and McClain, Robinson was arrested for violation of California Penal Code § 148 and Harrell was arrested for violation of California Penal Code §§ 148 and 243(b).[11] Under California Penal Code § 148(a)(1),[12] "the legal elements of a violation . . . are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *In re Muhammed C.*, 95 Cal. App. 4th 1325, 1329,(Cal. Ct. App. 2002) (citations omitted). Section 148 makes it a misdemeanor to resist, delay or obstruct an officer in the discharge of any duty of his office. "Section 148(a) does not make it a crime, however, to resist unlawful orders." *Maxwell v. County of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012) citing *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (en banc). Section 148 has been construed by the courts as applying only to lawful arrests, because "An officer is under no duty to make an unlawful arrest." *Jackson v. Superior Court*, 98 Cal. App.2d 183, 189, 219 P.2d 879 (1950); *accord, People v. Craig* 59 Cal. 370 (Cal. 1881); *People v. Perry*, 79 Cal. App.2d Supp. 906, 908,180 P.2d 465 (1947).

Pursuant to California Penal Code §834(a), if a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist

---

[11] *See* Doc. No. 239-5, Exh. D at D-5, Synopsis.

[12] California Penal Code § 148(a)(1) states:
Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

such arrest. Even if the arrest was unlawful, that would not justify or excuse an assault upon the officer. The remedy for improper police conduct is in the courts, not in private reprisal. (*People v. Coffey*, 67 A.C. 145, 162, fn. 18, 60 Cal. Rptr. 457, 430 P.2d 15; *People v. Baca*, 247 A.C.A. 560, 569, 55 Cal. Rptr. 681.) The law in California is that a person may not use force to resist any arrest or detention, lawful or unlawful, except that he may use reasonable force to defend life and limb against excessive force. *People v. Curtis*, 70 Cal.2d 347, 357, 74 Cal. Rptr. 713, 450 P.2d 33 (1969); *Evans v. City of Bakersfield*, 22 Cal. App. 4th 321, 326-333, 27 Cal. Rptr. 2d 406 (1994).

As a matter of statutory construction, it is clear that section 834(a) was meant at most to eliminate the common law defense of resistance to unlawful arrest, and not to make such resistance a new substantive crime. *See People v. Curtis*, 70 Cal.2d 347, 354-6 (Cal. 1969). This interpretation is borne out by reference to legislative hearings at which there were discussions on the purpose of section 834(a). *Id.* Significantly, both the Uniform Arrest Act, from which the language of section 834(a) was drawn, and the Model Penal Code take the approach of eliminating the defense but declining to make resistance a separate and additional crime. When section 834(a) was enacted in 1957, the Legislature amended the penalty provisions but did not change the "duty" language of section 148, thereby impliedly adopting the prior judicial interpretation of "duty." *Summers v. Freeman,* 128 Cal. App.2d 828, 832, 276 P.2d 131, (1954).

Even if section 834(a) now makes it a citizen's duty not to resist an unlawful arrest, this change in the law in no way purports to include an unlawful arrest within the performance of an officer's duty. If the officer was not performing his or her duties at the time of the arrest, the arrest is unlawful and the arrestee cannot be convicted under Penal Code section 148, subdivision (a).'" *Smith*, 394 F.3d at 695 (emphasis in original).

### 1. *Arrest of Shannon Robinson for Violation of Penal Code § 148(a)(1)*
### *Was Without Probable Cause Under 42 U.S.C. § 1983*

In their motion for summary judgment, the Plaintiffs argue that the only reason Robinson was arrested was that she refused to obey Office McClain's order to get out of

the car.  Plaintiffs' argue that because there was no basis to detain Robinson or give her a ticket for failure to provide proof of insurance, as the Court has previously found, there was no legal basis for Officer McClain to order Robinson to get out of the car.  Robinson further contends that from the time Officer McClain approached the car to demand her identification until he is heard telling her that she is under arrest, she had done nothing wrong and was therefore under no legal obligation to hang up the phone; get out of the car; or give McClain her identification.  *See* Doc. No. 39-2, Exh. I.

Officer McClain's arrest report for Robinson states that she was arrested for violation of California Penal Code § 148 for resisting, delaying or obstructing an officer in the discharge of his duties. *See* Doc. No. 39-5. Officer McClain states that he arrested her because she was refusing to comply with his instructions.  *See* Doc. No. 39-7, Exh. F at F-19: Lines 15-16.   The record before this Court does not indicate that Robinson used force in resisting her arrest,[13] only that she ignored and refused to obey commands made by Officer McClain.

As set forth above, the continued detention of the Plaintiffs by Officer's Savage and McClain violated Plaintiffs Fourth Amendment rights.  As such, the subsequent arrest of Robinson for failure to provide identification or comply with Officer McClain's orders was unlawful because it lacked probable cause.  A peace officer is not lawfully performing his duties if he is unlawfully arresting or detaining someone and if the arrest is unlawful, there is no violation of Penal Code section 148, subdivision (a). *Smith*, 394 F.3d at 695.

Based upon the foregoing, the Plaintiff Robinson's motion for summary judgment against Defendants Savage and McClain for unlawful arrest is hereby GRANTED IN PART and DENIED IN PART with causation and the amount of damages to be deter-mined at trial. Because there are questions of fact regarding the objective reasonableness of the officers conduct, the Court finds that the Defendants are not entitled to summary

---

[13] The record shows that before Officer McClain told Robinson that she was under arrest, the only physical touching that took place was when Officer McClain put his hand on Ms. Robinson's shoulder.

1   judgment on qualified immunity relative to this cause of action and Defendants motion

2   for summary judgment on this ground is DENIED, however, Defendants may raise the

3   defense of qualified immunity at trial. *See Wilkins v. City of Oakland*, 350 F.3d 949,

4   955-956 (9th Cir. 2003), *cert. denied*, --- U.S. ----, 125 S. Ct. 43, 160 L. Ed.2d 14 (2004).

5

6   ### 2. Plaintiffs' Claims that the Arrest of Dante Harrell Was Without Probable Cause Under 42 U.S.C. § 1983

7   Defendants arrested and charged Dante with violating California Penal Code §§

8   243(b), battery on a police officer and 148(a), delaying a peace officer in the execution of

9   his duties. The Plaintiffs contend that when Officers Savage and McClain surrounded

10  Plaintiffs' car and attempted to open the doors, they had effectively placed Dante Harrell

11  under arrest. Plaintiffs argue that a reasonable person in Dante's position would have

12  believed that he was under arrest because the two officers in uniform were on either side

13  of the car, with the patrol car blocking their exit, stating to the occupants of the vehicle

14  that they are under arrest and to get out of the car. The Plaintiffs argue that when

15  McClain said "You are under arrest," he did not address Robinson by name. *See* Doc. No.

16  39-2, Exh. I, 911 call at 2 min, 59 sec. Immediately after McClain said, "You are under

17  arrest," Harrell said, "See what it is, I get arrested." Exh. I, 911 call at 3 min, 2 sec.

18  Plaintiffs contend that the record shows that Harrell believed he was under arrest. The

19  Plaintiffs argue that while Officer McClain's testimony is that he intended to arrest

20  Robinson, there is nothing in the record that indicates that the command was given solely

21  to Robinson.

22  Plaintiff argues that at the time McClain said "You are under arrest," Harrell had

23  touched no one. The only thing Harrell had done up to this point was to provide his

24  driver's license and registration within seconds of the request being made, act politely

25  toward Officer Savage during the first interaction, record Officer McClain with his cell

26  phone, and ask Officer McClain why they were being detained without a reason.

27  Defendants' offer a very different account of the events that ultimately led to

28  Harrell's arrest. *See* Doc. No. 39-5, Exh. D, Officer McClain's police report, at D-5.

Officer McClain states that Harrell was preventing him from unlocking the passenger side door. *Id.* Harrell then threw his arm around Robinson, holding her against him and preventing Officer McClain from removing Robinson from the car. *Id.* Officer McClain states that he yelled at Robinson to get out of the car and for Harrell to let her go, but neither complied. *Id.* Officer Savage began struggling with Harrell. *Id.* Officer Savage states that when he and Officer Sacco attempted to pull Harrell out of the driver's door, Harrell began kicking at them and kicked Officer Sacco in the leg. *See* Doc. No. 39-5, Exh. D at D-19. Officer Savage states that when he went to grab Harrell's leg to stop him from kicking, he was kicked in the left index finger by Harrell. *Id.*

Given the conflicting accounts of what transpired prior to Plaintiff Harrell's arrest, the Court finds there are genuine disputes of material fact regarding Plaintiffs' claims for arrest without probable cause, because pursuant to California Penal Code §834(a), Harrell had a duty to refrain from using force to resist arrest, even an unlawful one. As such, Plaintiffs' motion for summary judgment for the unlawful arrest of Plaintiff Harrell is DENIED. Because there are questions of fact regarding the objective reasonableness of the officers conduct, the Court finds that the Defendants are not entitled to qualified immunity relative to this cause of action and Defendants motion for summary judgment on this ground is DENIED, however, Defendants may raise the defense of qualified immunity at trial. *See Wilkins v. City of Oakland*, 350 F.3d 949, 955-956 (9th Cir. 2003), *cert. denied*, --- U.S. ----, 125 S. Ct. 43, 160 L. Ed.2d 14 (2004).

### D. Plaintiffs' Claims for Battery of Robinson under California State Law

In their eighth cause of action in the SAC, Plaintiffs alleged that Defendants battered Robinson. The Plaintiffs claim that it is undisputed that Robinson was only refusing to obey an order to get out of the car. *See* Doc. No. 39-7, Exh. F. at F-28:13-15. The Plaintiffs' contend that Officer Savage pulled the cell phone out of Shannon's hand; threw it in the back seat; then took his OC spray and sprayed her right in the face. (Doc. No. 39-6, Exh. E, Savage Depo at E-30: 11-18. Plaintiffs contend that it is not disputed

that there was no reason or justification for McClain putting his hands on Robinson, grabbing and throwing the telephone out of her hands, pepper spraying Robinson in the face and dragging her out of the car. The Court cannot agree as there are questions of fact that remain with regard to the events following Officer McClain's request for Robinson's identification, because the Defendants contend that the Plaintiffs were uncooperative and ultimately violent with the officers. Officer Savage states in his deposition that Robinson committed a battery on Officer McClain. *Id.* Exh. E-30: line 11 - E-32: line 8.

     Given the conflicting accounts in the record of what transpired, the Court finds there are genuine disputes of material fact regarding Plaintiffs' battery claims and Plaintiffs' motion for summary judgment is therefore DENIED. Because there are questions of fact regarding the objective reasonableness of the officers conduct, the Court finds that the Defendants are not entitled to qualified immunity relative to this cause of action and Defendants motion for summary judgment on this ground is DENIED, however, Defendants may raise the defense of qualified immunity at trial. *See Wilkins v. City of Oakland*, 350 F.3d 949, 955-956 (9th Cir. 2003), *cert. denied*, --- U.S. ----, 125 S. Ct. 43, 160 L. Ed.2d 14 (2004).

//

### E. Plaintiffs' Negligence Claims

     In order to prevail on a claim for common law negligence against a police officer, Plaintiffs must show that (1) the officer owed plaintiff a duty of care; (2) the officer breached the duty by failing "to use such skill, prudence, and diligence as other members of the [the] profession commonly possess and exercise," (3) there was a "proximate causal connection between the [officer's] negligence conduct and the resulting injury" to the plaintiff; and (4) the officer's negligence resulted in "actual loss or damage" to the plaintiff. *Harris v. Smith*, 157 Cal. App. 3d 100, 104 (1984). Therefore, "to prevail on the negligence claim, Plaintiffs must show that the Defendant officers acted unreasonably and that the unreasonable behavior harmed Plaintiffs. *Price v. County of San Diego*,

990 F. Supp. 1230 (S.D. Cal. 1998).

The Court has found Defendants detained and arrested Robinson for violation of Penal Code § 148(a)(1) without probable cause in violation of Robinson's constitutional rights, however, the Plaintiffs have failed to demonstrate a casual connection between the alleged negligence on behalf of the officers and Plaintiffs' actual loss or damage. Issues of comparative negligence also remain, as a dispute exists as to the conduct of plaintiffs in escalating or physically resisting the officers. Given the genuine disputes of material fact regarding the events that led to Plaintiffs being sprayed with OC, tasered, pulled from the vehicle, being taken to the ground and arrested, the Court finds summary judgment on this claim inappropriate and Plaintiffs' motion for summary judgment is therefore DENIED. Because there are questions of fact regarding the objective reason-ableness of the officers conduct, the Court finds that the Defendants are not entitled to qualified immunity relative to this cause of action and Defendants motion for summary judgment on this ground is DENIED, however, Defendants may raise the defense of qualified immunity at trial. *See Wilkins v. City of Oakland*, 350 F.3d 949, 955-956 (9th Cir. 2003), *cert. denied*, --- U.S. ----, 125 S. Ct. 43, 160 L. Ed.2d 14 (2004).

//

//

### 3. Plaintiffs Claim for Violation of Cal. Civ. Code § 52.1

Plaintiffs' fifteenth cause of action in their SAC alleges violations of California Civil Code Section 52.1 against Officers Savage and McClain. Section 52.1 provides that "any individual whose exercise or enjoyment of constitutional rights . . . has been interfered with" by "threats, intimidation or coercion" may bring a civil action on his or her own behalf. Cal. Civ. Code § 52.1. Plaintiffs' §52.1 claims rest upon their allegations that first, Defendants violated their Fourth Amendment rights through excessive force and false arrest and second, that these rights were interfered with by threats, intimidation, and coercion. However, as set forth above, genuine disputes of material fact exist regarding Plaintiffs claims of excessive force. As such, the Court finds there are ques-

1    tions of fact that remain and Plaintiffs' motion for summary judgment is therefore

2    DENIED. Because there are questions of fact regarding the objective reasonableness of

3    the officers conduct, the Court finds that the Defendants are not entitled to qualified

4    immunity relative to this cause of action and Defendants motion for summary judgment

5    on this ground is DENIED, however, Defendants may raise the defense of qualified

6    immunity at trial. *See Wilkins v. City of Oakland*, 350 F.3d 949, 955-956 (9th Cir. 2003),

7    *cert. denied*, --- U.S. ----, 125 S. Ct. 43, 160 L. Ed.2d 14 (2004).

8    ***II. Defendants' Motion for Summary Judgment***

9          Defendants argue that they are entitled to summary judgment on the basis of

10   qualified immunity. The doctrine of qualified immunity protects government officials

11   "from liability for civil damages insofar as their conduct does not violate clearly estab-

12   lished statutory or constitutional rights of which a reasonable person would have known."

13   *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Harlow v. Fitzgerald*, 457 U.S.

14   800, 818 (1982). "The protection of qualified immunity applies regardless of whether the

15   government official's error is 'a mistake of law, a mistake of fact, or a mistake based on

16   mixed questions of law and fact.'" *Pearson*, 129 S. Ct. at 815 (quoting *Groh v. Ramirez*,

17   540 U.S. 551, 567 (2004) (Kennedy, J. dissenting)).

18         The Ninth Circuit employs a three-part test to determine whether an individual is

19   entitled to qualified immunity. First, the specific right allegedly violated must be

20   identified. Secondly, it must be determined whether that right was so clearly established

21   as to alert a reasonable officer to its constitutional parameters. Third, if the law is clearly

22   established, it must be determined whether a reasonable officer could have believed

23   lawful the particular conduct at issue. *Kelly v. Borg*, 60 F.3d 664, 666 (9th Cir.1995). The

24   plaintiff in a Section 1983 action bears the burden of proving that the right allegedly

25   violated was clearly established at the time of the officer's allegedly impermissible

26   conduct. *Camarillo v. McCarthy*, 998 F.2d 638, 640 (9th Cir.1993). A law is "clearly

27   established" when "the contours of that right [are] sufficiently clear that a reasonable

28   officer would understand that what he is doing violates that right." *Anderson v. Creigh-*

23

11cv0876

1    *ton*, 489 U.S. 635, 640 (1987). To demonstrate clearly established law at the time of the
2    events in question, the plaintiff must show that the particular facts of the case support a
3    claim of clearly established right. This does not mean that the exact factual situation of
4    the case must have been previously litigated. Specific binding precedent is not required to
5    show that a right is clearly established for qualified immunity purposes. Absent binding
6    precedent, a court should look at all available decisional law including decisions of state
7    courts, other circuits, and district courts to determine whether the right was clearly
8    established. Nonetheless, the contours of the clearly established right must be sufficiently
9    clear that a reasonable official would understand that what he is doing violates that right.
10   *See Doe By and Through Doe v. Petaluma City School Dist.*, 54 F.3d 1447, 1450 (9th
11   Cir.1995).

12        In *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), the
13   Supreme Court set forth a two-pronged inquiry to resolve all qualified immunity claims.
14   First, "taken in the light most favorable to the party asserting the injury, do the facts
15   alleged show the officers' conduct violated a constitutional right?" *Id.* at 201. Second, if
16   so, was that right clearly established? *Id.* "The relevant, dispositive inquiry in determin-
17   ing whether a right is clearly established is whether it would be clear to a reasonable
18   officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. This
19   inquiry is wholly objective and is undertaken in light of the specific factual circumstances
20   of the case. *Id.* at 201.

21        Although Defendants' brief sets forth the legal standards upon which a determina-
22   tion of qualified immunity is made, there is no discussion or analysis in their brief why
23   these officers should be entitled to qualified immunity under the allegations of the
24   Complaint. Defendants correctly state that officers performing discretionary duties have
25   qualified immunity, which shields them from civil damages liability as long as their
26   actions could reasonably have been thought consistent with the rights they are alleged to
27   have violated.  However, whether Officers Savage and McClain reasonably thought their
28   actions consistent with the rights they are alleged to have violated is question of fact and

24

as such, this is not the proper proceeding for this determination.   There is also little evidence of what the reasonable person (officer) would do in the circumstances of this case. Since the determination of the objective reasonableness of the officers' conduct turns on disputed facts, Defendants motion for summary judgment based on qualified immunity is DENIED. *See Wilkins v. City of Oakland*, 350 F.3d 949, 955-956 (9th Cir.2003), *cert. denied*, --- U.S. ----, 125 S. Ct. 43, 160 L. Ed.2d 14 (2004).

### *Conclusion*

Based upon the parties moving papers and for the reasons set forth above, the Plaintiffs' motion for summary judgment, (Doc. No. 39), is GRANTED IN PART AND DENIED IN PART.  Defendants' motion for summary judgment, (Doc. No. 52), is DENIED. The Plaintiffs' sixth, eleventh, twelfth, thirteenth and fourteenth causes of action and Defendants William Lansdowne and Matthew Dobbs are hereby DISMISSED. *See* Doc. No. 66, p. 2:4-8.

IT IS SO ORDERED.

DATED:  May 28, 2013

Hon. Anthony J. Battaglia
U.S. District Judge

25

11cv0876