JAN I. GOLDSMITH, City Attorney
DANIEL F. BAMBERG, Assistant City Attorney
DONALD F. SHANAHAN, Lead Litigation Attorney
California State Bar No. 49777
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone:  (619) 533-5800
    Facsimile:  (619) 533-5856
Attorneys for Defendants,
Ariel Savage and Justin Mattly

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SGT. JAVIER COTA, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF SAN DIEGO,<br>SDPD OFFICER ARIEL SAVAGE,<br>SDPD OFFICER JUSTIN MATTLY,<br><br>    Defendants. | Case No.  12-cv-0998 BAS (JLB)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR NEW TRIAL**<br><br>Judge: Hon. Cynthia Bashant<br>Court Room: 4B (Schwartz)<br>Trial: May 19, 2015 |

# TABLE OF CONTENTS

I     PLAINTIFF FAILS TO MEET HIS BURDEN FOR A NEW TRIAL .......... 1

    A.    First Amendment / Retaliation ............................................................... 2

    B.    Excessive Force ..................................................................................... 4

        (1)    Excessive force claim is independent from an arrest claim ........... 4

        (2)    Plaintiff failed to object to the Special Verdict Form .................... 5

II    THE JURY CORRECTLY FOLLOWED THE JURY VERDICT FORM AND PLAINTIFF FAILED TO OBJECT ....................................................... 7

III   PLAINTIFF FAILED TO PROVE HE WAS ENTITLED TO PAIN AND SUFFERING DAMAGES ................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*
  369 U.S. 355 (1962) ...................................................................................... 11

*Blankenhorn v. City of Orange*
  485 F.3d 463 (9th Cir. 2007) ........................................................................... 5

*Bodine v. Warwick*
  72 F.3d 393 (3rd Cir. 1995) ............................................................................. 5

*Bonner v. Park*
  2009 WL 279070 *4 (W.D. Wash.) .................................................................. 1

*Bulgo v. Munoz*
  853 F.2d 710 (9th Cir. 1988) ........................................................................... 1

*Clark v. Pennsylvania Railroad Co.*
  328 F.2d 591 (2d Cir. 1964) ............................................................................ 6

*Collado v. UPS*
  419 F.3d 1143 (11th Cir. 2005) ....................................................................... 2

*Duncan v. Duncan*
  377 F.2d 49 (6th Cir. 1967) ............................................................................. 2

*Eagle v. American Telephone and Telegraph Company*
  796 F.2d 541 (9th Cir. 1985) ........................................................................... 6

*El-Hakem v. BJY Co.*
  415 F.3d 1068 (9th Cir. 2005) ......................................................................... 6

*Experience Hendrix LLC v. Hendrixlicensing.com, Ltd.*
  762 F.3d 829 (9th Cir. 2014) ........................................................................... 2

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*
  772 F.2d 505 (9th Cir. 1985) ......................................................................... 10

*Galdamez v. Potter*
  415 F.3d 1015 (9th Cir. 2005) ......................................................................... 8

*Gallick v. Baltimore & Ohio R.R.Co.*
  372 U.S. 108 (1963) ...................................................................................... 11

*Headwaters Forest Defense v. County of Humbolt*
  240 F.3d 1188 (9th Cir. 2000) ......................................................................... 4

*Holmes v. City of Massillon*
  78 F.3d 1041 (6th Cir. 1996) ........................................................................... 2

*Hunt v. County of Orange*
  672 F.3d 806 (9th Cir. 2012) ........................................................................... 6

Cases

*Jones v. Parmley*
  465 F.3d 46 (2nd Cir. 2006)..................................................................................5

*Landes Construction Co., Inc. v. Royal Bank of Canada*
  833 F.2d 1365 (9th Cir. 1987)..............................................................................2

*Magnussen v. YAK, Inc.*
  73 F.3d 245 (9th Cir. 1996)................................................................................11

*Mangold v. California Pub. Utils. Comm'n.*
  67 F.3d 1470 (9th Cir. 1995)................................................................................8

*Mattos v. Agarano*
  661 F.3d 433 n. 4 (9th Cir. 2011).........................................................................4

*McDaniel v. Anheuser-Busch, Inc.*
  987 F.2d 298 (5th Cir. 1993)................................................................................8

*Mitchell v. Boelcke*
  440 F.3d 300 (6th Cir. 2006)................................................................................2

*Molski v. M.J. Gable, Inc.*
  481 F.3d 724 (9th Cir. 2011)............................................................................1, 2

*Myers v. Gregory*
  2003 WL 1872973 *3 (D. Del.) ...........................................................................9

*Nat'l Labor Relations Bd. V. Howell Chevrolet Co.*,
  204 F.2d 79 (9th Cir. 1953)................................................................................10

*Quock Ting v. United States*
  140 U.S. 417 (1891) ...........................................................................................10

*Roy v. Volkswagen of America, Inc.*
  896 F.2d 1174 (9th Cir. 1990)..............................................................................1

*Samon v. Rollins*
  173 F.3d 1150 (9th Cir. 1999)..............................................................................8

*Smith v. Comm'r*
  800 F.2d 930 (9th Cir. 1986)..............................................................................10

*Tennessee v. Garner*
  471 U.S. 1 (1985) .................................................................................................5

*Townsend v. Donaldson*
  933 A.2d 282 (D.C. Ct of Appeals 2007) ............................................................8

*United States v. First National Bank of Circle*
  652 F.2d 882 (9th Cir. 1981)................................................................................6

*United States v. Parsons Corp.*
  1 F.3d 944 (9th Cir. 1993)....................................................................................8

Cases

*Velazquez v. City of Long Beach*
  2015 WL 4256899 (9th Cir. 2015) ..................................................................................5

*Wilkes v. Reyes*
  5 F.3d 412 (9th Cir. 1993) ..............................................................................................9

**Statutes**

California Penal Code section 647(f) ...............................................................................3, 11

Federal Rule of Civil Procedure 59 ........................................................................................1

Federal Rule of Civil Procedure Rule 16(e) ...........................................................................6

Defendants, Justin Mattly, and Ariel Savage, hereby oppose Plaintiff's Ex Parte Motion for New Trial, as follows:

# I

# PLAINTIFF FAILS TO MEET HIS BURDEN FOR A NEW TRIAL

Plaintiff moves for a new trial on damages pursuant to Federal Rule of Civil Procedure 59, which provides, in relevant part:

(a) In General.

(1) *Grounds for New Trial.* The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:

(A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court.

A trial court may grant a new trial, even though the verdict is supported by substantial evidence, if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which his false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Roy v. Volkswagen of America, Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (citations omitted), *cert. denied*, 500 U.S. 928 (1991). "The court is not justified in granting a new trial merely because it might have come to a different result from that reached by the jury." *Id*. (citations omitted). "[T]he hurdle that a motion for . . . a new trial must clear to be successful is a very high one." *Bulgo v. Munoz*, 853 F.2d 710, 717 (9th Cir. 1988).

Plaintiff argues the verdict was against the clear weight of the evidence at trial on two causes of action, Plaintiff's (1) First Amendment retaliation claim, and (2) the excessive force claim. Determining "the clear weight of the evidence" is a fact specific endeavor and an appellate court will generally not reverse the denial of a new trial motion if there was some reasonable basis for the jury's verdict. *Molski v. M.J. Gable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2011); *Bonner v. Park*, 2009 WL 279070 *4 (W.D. Wash.).  A review of the trial record clearly demonstrates ample evidence to support the jury's findings.

In considering a Rule 59(a) motion for a new trial, the Court "is not required to view the trial evidence in the light most favorable to the verdict." Instead, the District Court can weigh the evidence and assess the credibility of the witnesses. *Experience Hendrix LLC v. Hendrixlicensing.com, Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014).

A decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury regardless of his own doubts in the matter. *Landes Construction Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

Because determining "the clear weight of the evidence" is a fact-specific endeavor, appeals courts are reluctant to second-guess district courts' conclusions. An appellate court generally will not reverse the denial of a new trial motion if there was some "reasonable basis" for the jury's verdict. *Molski v. M.J. Gable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2011); *Mitchell v. Boelcke*, 440 F.3d 300, 305 (6th Cir. 2006); *Collado v. UPS*, 419 F.3d 1143, 1155 (11th Cir. 2005).

Further, "courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967). New trials are not to be granted on the grounds that the verdict was against the weight of the evidence "unless that verdict was unreasonable." Thus, if a reasonable juror could reach the challenged verdict, a new trial is improper. *Holmes v. City of Massillon*, 78 F.3d 1041, 1047-48 (6th Cir. 1996).

**A.     First Amendment / Retaliation**.

Plaintiff argues the jury's verdict regarding the retaliation claim was against the weight of the evidence claiming the evidence was uncontradicted that the arrest was precipitated by the Defendants' anger at Mr. Cota's verbal challenge.

Plaintiff's evidence was limited to Mr. Cota's self-serving testimony speculating that the women were being hit on by the Defendants and his alleged challenge was the sole basis for his arrest. At trial, Plaintiff testified that he heard the statement, "I'm not interested," but no other remarks to suggest the officers were making advances on the women. Without any additional facts, Mr. Cota made a giant leap based upon pure speculation, which a jury could reasonably reject.

Contrary to Plaintiff's allegations in his motion, Mr. Cota's testimony was vigorously contested. The Defendants disputed Plaintiff's claim as both officers testified the sole purpose of speaking with the women was to determine whether they had been drinking and capable of driving. The officers articulated the reason for his arrest was not retaliation, but Mr. Cota's refusal to have the pedicab move out of the travel lane, interfering with an investigation, and his public intoxication in violation of California Penal Code section 647(f).  The testimony resulted in a familiar, "he said – she said" situation, where a reasonable jury could logically believe the Defendant officers and reject Plaintiff's conjecture.

Incomprehensively, Plaintiff asserts "There is not one scintilla of evidence in the record to suggest that Mr. Cota's testimony was inconsistent or contained omissions. Nor was there anything about his demeanor which raised doubts about his credibility." [Doc. No. 130-1, Plaintiff's Motion, p. 7, ll. 22-25]  Without submitting a complete laundry list of Mr. Cota's issues with credibility, the following sample could reasonably give a jury pause:  Mr. Cota testified that:

(1)   although the officers were in full uniform, standing 15-20 feet away, Plaintiff thought they were security guards;

(2)   the officer who was closest to the pedicab and to whom Plaintiff spoke was African-American and the Caucasian officer was on the sidewalk speaking with the women – when in fact, the roles of the officers were the reverse of Plaintiff's testimony;

(3)   the configuration of the pedicab as testified to by Cota was erroneous;

3

(4) Cota admitted to being very intoxication to two different Internal Affairs officers during his interviews, on the witness stand, Plaintiff testified that he understood the questions related to his condition at Whiskey Girl, but not at the time of his arrest;

(5) Cota's testimony included his description of the awful, horrendous ride in the SDPD patrol car from 5th Avenue to the Detox Center, where the officers drove in a reckless manner, speeding around curves, forcing the handcuffs to crimp down on his wrist, causing extreme pain. The trip, according to Cota, seemed like it took forever and may have lasted up to an hour. The testimony of Michael Ramos, an Information Systems Analyst with the SDPD, debunked any notion that Cota's testimony was credible. The GPS system recorded a trip time of 6 minutes and the record of the patrol car's speed around the three curves was 4 mph, 8 mph, and 10 mph, respectively. The top speed of the vehicle for the entire trip was 25 mph.

Thus, the jury's reaction to Plaintiff's testimony was rational, logical and sound.

B. **Excessive Force**.

(1) *Excessive force claim is independent from an arrest claim.*

Without authority in support, Plaintiff alleges that if Plaintiff was arrested without probable cause, any force, including handcuffing, was unconstitutional. Plaintiff points to *Headwaters Forest Defense v. County of Humbolt*, 240 F.3d 1188, 1199 (9th Cir. 2000), which held pepper spraying non-violent protesters was unnecessary and where there is no need for force, any force used is unconstitutionally unreasonable. The case does not stand for the proposition that a use of force subsequent to an illegal arrest is by definition excessive force.

The Ninth Circuit recently addressed this issue in *Mattos v. Agarano,* 661 F.3d 433 n. 4 (9th Cir. 2011), wherein Plaintiff made the same argument as Plaintiff in the instant matter. The court held it need not decide whether the officer had probable cause to arrest because the answer did not affect the Fourth Amendment

excessive force claim. "[E]stablishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice versa." *Id*. at n. 4.

> The courts require an independent analysis of the factors to decide an excessive force claim. *Graham v. Connor*, 490 U.S. 396 (1989). Determining whether the force use to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion of the individual's Fourth Amendment interests" against the countervailing governmental interests.

*Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985).

"Underlying *Graham*'s objective reasonableness test is the clear principle that the force used to make an arrest must be balanced against the *need* for force; it is the need for force which is at the heart of the *Graham* factors." *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007).

In a very recent Ninth Circuit case, the court unequivocally rejected the notion that a lack of probable cause for an arrest requires a finding of excessive force for any subsequent force used by the police when executing that arrest. In *Velazquez v. City of Long Beach*, 2015 WL 4256899 (9th Cir. 2015), held that the *Graham* reasonableness analysis is applicable to an excessive force issue whether or not there is also an unlawful arrest claim. The court cited to *Jones v. Parmley*, 465 F.3d 46 (2nd Cir. 2006), rejecting the validity of plaintiff's argument quoting from then Judge Sotomayer. "[T]he reasonableness test established in Graham remains the applicable test for determining when excessive force has been used, including those cases where officers allegedly lack probable cause to arrest." 465 F.3d at 62. *See also, Bodine v. Warwick*, 72 F.3d 393, 400 (3rd Cir. 1995).

**(2)** *Plaintiff failed to object to the Special Verdict Form.*

At the trial, Plaintiff's testimony and counsel's argument to the jury claimed that the handcuffs were not double-locked and the subsequent wild ride from 5th Avenue to the Detox Center caused extreme pain and bruising. Mr. Ramos's testimony, in conjunction with the GPS realtime display, dispelled Mr. Cota's tale.

Subsequent to the arguments of counsel, the jury determined that excessive force was not used by the Defendants officers. Because the jury rightly rejected Plaintiff's allegations, Plaintiff now comes before the Court, for the first time, arguing that merely placing the handcuffs on Plaintiff may be considered excessive force. Since this argument was never presented to the jury, Plaintiff cannot now claim the jury disregarded the evidence. Nor was the issue part of the Pretrial Order and, as a consequence, is not subject to review. The disputed facts section of the Pretrial Order signed by this Court on April 6, 2015, states in pertinent part:

> "9.   All relevant facts relating to the use of force by Defendants, causing the handcuffs placed on Plaintiff to cause injury.
>
> 10.   All relevant facts relating to whether Plaintiff complained to Defendants that the handcuffs were causing pain.
>
> 11.   All facts relating to whether the handcuffs placed on Plaintiff caused injury."

[Doc. No. 107 – Pretrial Order, p. 7, ll. 13-18].

Issues not preserved in the Pretrial Order are eliminated from the case. *Hunt v. County of Orange*, 672 F.3d 806, 817 (9th Cir. 2012). A Rule 16(e) Order controls the subsequent cause of action in the litigation unless it is modified by a subsequent order. A theory will be barred if not at least implicitly included in the order. *Eagle v. American Telephone and Telegraph Company*, 796 F.2d 541, 548 (9th Cir. 1985). The purpose of the Pretrial Order is to guide the course of the litigation. Advisory Committee Note (citing *Clark v. Pennsylvania Railroad Co.*, 328 F.2d 591 (2d Cir. 1964)).  A party may not offer evidence or advance theories at the trial which were not included in the Pretrial Order. *United States v. First National Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981); *El-Hakem v. BJY Co.*, 415 F.3d 1068, 1077 (9th Cir. 2005).

The issue before the jury was whether the handcuffs caused injury to the Plaintiff, not whether they were placed on Plaintiff's person. Neither the Pretrial

1 Order, the testimony of Plaintiff, nor arguments to the jury referenced placing the
2 handcuffs on Plaintiff amounted to excessive force.
3     Since Plaintiff failed to raise the issue at trial, he cannot now claim
4 entitlement to a new trial.

## II
## THE JURY CORRECTLY FOLLOWED THE JURY VERDICT FORM AND PLAINTIFF FAILED TO OBJECT

8     Plaintiff maintains the jury failed to follow the Court's Jury Instruction No.
9 20, which states in part, "if you find for the plaintiff but you find that the plaintiff
10 failed to prove damages as defined by these instructions, you must award nominal
11 damages. Nominal damages may not exceed one dollar."
12     However, the Special Verdict Form directed the jury otherwise. (See Exhibit
13 A, attached hereto). After several variations of a Special Verdict Form was
14 submitted by each of the parties, the District Court adopted the Defendants' version
15 with its own modification. The Special Verdict Form directed the jury to determine
16 whether each cause of action, Retaliatory Arrest, False Arrest and Excessive Force,
17 had been proved by a preponderance of the evidence. At the end of the sequence of
18 each cause of action, the jury was asked to determine if that violation was a
19 substantial factor in the harm done to Plaintiff on June 4, 2010. (Exhibit A –
20 Questions 3, 6, and 9). The jury was further instructed that "(If you answered "Yes"
21 to Question Nos. 3, 6, or 9, please proceed to Question Nos. 10 and 11. If you
22 answered "No" to Question Nos. 3, 6, or 9, please have the foreperson sign, date
23 and return this Special Verdict Form.)"
24     If the jury answered Yes to Question Nos. 3, 6, or 9, they were directed to the
25 damage questions – Question Nos. 10 and 11. If they answered No to Question
26 Nos. 3, 6, or 9, they were to have the foreperson sign and return the Special Verdict
27 Form. The jury answered No to Question Nos. 3, 6, and 9 and, as directed, the jury
28 ///

1  foreperson signed it and returned it to the Court. Thus, the jury followed the
2  directions set forth in the Special Verdict Form.
3      Before submitting the Special Verdict Form to the jury, this Court
4  specifically discussed with both counsel that if the jury answered No to Question
5  Nos. 3, 6, the jury foreperson would sign the Form and return it. In fact, the Court
6  highlighted this paragraph when reviewing the Special Verdict Form. The Court
7  then asked if there were any objections to the Verdict Form. Plaintiff's counsel, in
8  open court and on the record, stated she had no objection the Special Verdict Form.
9  Thus, Plaintiff waived all objections to the Verdict Form and to its obvious
10 consequences.
11     A party must object to the form of special interrogatories in the trial court in
12 order to preserve the issue. *Samon v. Rollins*, 173 F.3d 1150, 1155 (9th Cir. 1999);
13 *United States v. Parsons Corp.*, 1 F.3d 944 (9th Cir. 1993); *McDaniel v. Anheuser-
14 Busch, Inc.*, 987 F.2d 298, 306 (5th Cir. 1993). As long as the questions are
15 adequate to obtain a jury determination of all the factual issues essential to
16 judgment, the trial court has complete discretion as to the form of the special
17 verdict. *Galdamez v. Potter*, 415 F.3d 1015, 1026 (9th Cir. 2005); *Mangold v.
18 California Pub. Utils. Comm'n.*, 67 F.3d 1470, 1475 (9th Cir. 1995).
19     A second opportunity to object was available to Plaintiff when the jury
20 returned its verdict in open court. The Court's Clerk read the Special Verdict Form
21 from the jury, announcing that no damages were awarded. Plaintiff could have and
22 should have made his objection to the Verdict at the time and not wait 28 days post-
23 filing of the Judgment. The policy behind this rule, providing the Trial Court with
24 notice and an opportunity to make corrections so that a verdict is not jeopardized,
25 applies with particular force where a jury sat for almost two weeks and took several
26 years to prepare. *Townsend v. Donaldson*, 933 A.2d 282 (D.C. Ct of Appeals 2007).
27     Moreover, Jury Instruction No. 20 submitted by the Court to the jury did not
28 preclude the jury from concluding that zero was a nominal sum.  In *Wilkes v. Reyes*,

1  5 F.3d 412 (9th Cir. 1993). A case on point with the instant matter. There, the jury
2  found for the Plaintiff on his claim for a constitutional claim for excessive force.
3  The jury entered a verdict for Wilkes. It did not award any damages, however,
4  instead, it filled in the number zero next to the line providing for nominal or
5  compensatory damages and the line providing for punitive damages. Plaintiff's
6  counsel argued the general verdict was inconsistent with its answers to special
7  interrogatories. The jury was instructed that if it found no actual damages, "then
8  you must return a verdict for that plaintiff in some nominal sum, such as one
9  dollar." The court found that the instruction did not preclude the jury from
10 concluding that "zero" was a nominal sum, and that no greater amount was
11 permissible without proof of "pain." While "nominal" for the purpose of damages
12 awards means "insignificantly small or trifling," in a lay sense it also means "in
13 name only." American Heritage Dictionary, 845 (2d ed. 1985). Zero damages
14 would be damages in name only, and would reconcile the jury's answer to the
15 special interrogatory with the general verdict. *See also Myers v. Gregory*, 2003 WL
16 1872973 *3 (D. Del.). Thus, the jury in the instant matter not only followed the
17 Special Verdict Form, it could irrespectively award zero dollars.

## III

## PLAINTIFF FAILED TO PROVE HE WAS ENTITLED TO PAIN AND SUFFERING DAMAGES

21  Plaintiff's claim of pain and suffering as a result of tight handcuffs bruising
22 his wrist lacked merit and the jury so found. Aside from Plaintiff's self-serving
23 testimony, no other evidence was presented, such as medical records, photographs,
24 or even complaints the night of the incident to Sgt. Sarot or Lt. Christman at SDPD
25 Headquarters. The sole reason for his contact with Defendants' supervisors was to
26 object to the conduct of the officers and his failure to even mention his injuries calls
27 into question the veracity of Plaintiff's claim. Plaintiff also neglected to make any
28 mention of the incident to Jake Wise, the Volunteers of American employee, who

checked Plaintiff into Detox that morning. Under the state of evidence, common sense dictates that a jury would reject Plaintiff's allegations.

Plaintiff also claims that the jury was required to award damages for the embarrassment and humiliation that he suffered as a result of the arrest. During the entire episode, Plaintiff displayed behavior which was confrontational, boisterous, aggressive, and non-compliant, all the while using foul language. When speaking to Sgt. Sarot and Lt. Christman, Mr. Cota was described as confrontational, interruptive of their conversation, and rude. The description hardly represents someone who is embarrassed and/or humiliated.

In support of his claim, Mr. Cota testified that he was embarrassed and humiliated. But like the alleged injury to his wrist, no other evidence was presented to support his claim. It has long been held that a jury may properly refuse to credit even uncontradicted testimony. *Quock Ting v. United States*, 140 U.S. 417, 420-21 (1891) (holding that even though uncontradicted testimony generally should control a decision of the court, "that rule admits of many exceptions," including when the testimony is inconsistent or contains omissions or when the witness's demeanor raises doubt about the witness's sincerity); *Nat'l Labor Relations Bd. V. Howell Chevrolet Co*., 204 F.2d 79, 86 (9th Cir. 1953) (referring to the proposition that a trier of fact must accept uncontradicted testimony as "an ancient fallacy"); *see also Smith v. Comm'r*, 800 F.2d 930, 935 (9th Cir. 1986) (doubting credibility); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc*., 772 F.2d 505, 514 n. 8 (9th Cir. 1985).

Plaintiff also claims his liberty was restricted and, as a consequence, damages are required. However, as previously discussed, an award of zero may be an appropriate award. Plaintiff's case lacked any proof of monetary loss whether in the form of documentation and/or testimony. The trial record disclosed Plaintiff was not booked into jail after his arrest, but rather was placed at the Detox Center where he was given a mattress and allowed to sleep. After a few hours, he was released.

The jury reached its decision after it heard all of the evidence and concluded Plaintiff was entitled to a damage award of zero. A trial court is rarely entitled to disregard jury verdicts that are supported by substantial evidence. The Supreme Court has held that a trial court has a duty to attempt to harmonize seemingly inconsistent answers to special verdict interrogatories, "if it is possible under a fair reading of them." *Gallick v. Baltimore & Ohio R.R.Co.*, 372 U.S. 108, 119 (1963). A court may not disregard a jury's verdict and order a new trial until it "attempt[s] to reconcile the jury's findings, by exegesis if necessary." *Id*. "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962). To do otherwise "results in a collision with the Seventh Amendment." *Id*.; *see also Magnussen v. YAK, Inc.*, 73 F.3d 245, 246-47 (9th Cir. 1996).

The jury could have considered a number of plausible bases reaching their conclusion. One rational may have been from the testimony of Defendant Officers that they could have arrested Plaintiff for violation of California Penal Code section 148 (interfering with an officer's investigation), which would have resulted in jail time rather than four hours in the Detox Center. The Officers had probable cause for an arrest, but did not charge the Plaintiff with this crime. Therefore, Plaintiff received a benefit because of the Officers' decision not to arrest for a Section 148 offense.

Another reasonable explanation may be found in the Penal Code section 647(f) which Plaintiff was charged. There are two elements of a 647(f) charge: (1) the person must be found in a public place under the influence of an intoxicating liquor and (2) be in such a condition that the person is unable to exercise care for his own safety or the safety of others.

During the trial, substantial evidence was presented establishing that Plaintiff was intoxicated. The jury may have found for the Defendants with respect to this

element, but was not persuaded as to the second element (unable to exercise care for his own safety or the safety of others). The jury may well have determined his placement in the Detox Center was on balance benefitted Plaintiff as he may have made some awful decisions later that night such as driving his car or that his belligerent behavior could have resulted in a confrontation with someone at 3:00 a.m. in the morning.  Hence, the fact that he was taken somewhere safe to sleep off the condition may on balance been a benefit and damages not warranted.

      The jury was well within its powers to discredit Plaintiff's testimony with respect to all of his claims for damages. The jury's verdict cannot be said to be contrary to the clear weight of the evidence and a new trial is not warranted.

Dated:  July 24, 2015           JAN I. GOLDSMITH, City Attorney


By */s/ Donald F. Shanahan*
    Donald F. Shanahan
    Lead Deputy City Attorney

Attorneys for Defendants
Justin Mattly and Ariel Savage